Michael BALDER and Zita
Balder, Respondents,

v.

Thomas W. HALEY, Defendant and
Third-Party Plaintiff,

and

Republic Water Heater
Company, Respondent.

HONEYWELL, INC.,
Petitioner, Appellant,

v.

Josephine PIRKL, Third-Party
Defendant, Respondent.

No. C7–85–1259.

Supreme Court of Minnesota.

Jan. 9, 1987.

George W. Flynn, Scott W. Johnson, Minneapolis, for appellant.

Jeffrey R. Brauchle, Minneapolis, for Michael Balder.

Paul D. McKeen, St. Paul, for Republic Water Heater Co.

Thomas A. Zupane, St. Cloud, for Josephine Pirkl.

YETKA, Justice.

This is an appeal from the court of appeals' decision to reverse a Benton County District Court's judgment based on a jury verdict that appellant Honeywell was not responsible through negligence for respondent Michael Balder's injury in the explosion of a liquid propane water heater. Though sustaining the jury's findings that Honeywell had not negligently designed a particular gas valve implicated in the accident, the court of appeals held *sua sponte* that evidence conclusively demonstrated that Honeywell had breached its duty to warn of dangers associated with the malfunction or misuse of the valve. The court of appeals remanded for a new trial in which it would be determined whether appellant's negligence caused Michael Balder's injuries, and, if so, to what extent. We reverse the court of appeals and reinstate the judgment of the trial court.

On July 23, 1980, liquid propane gas which had leaked from a gas water heater exploded in the basement of a farmhouse owned by Ms. Josephine Pirkl, severely burning Ms. Pirkl's son, Michael Balder. The immediate cause of the leak was the failure of the gas control valve on Ms. Pirkl's water heater to shut off the flow of gas when the heater's pilot light, for some unknown reason, was extinguished. The resulting pool of gas was then ignited by an unknown source.

The valve that malfunctioned was manufactured by Honeywell, Inc., and was referred to as a V5130 gas valve. The description of the V5130 valve contained in the court of appeals' opinion is reasonably accurate and will not be repeated here. *Balder v. Haley*, 390 N.W.2d 855, 858–59 (Minn.Ct.App.1986).

The V5130 gas control valve involved in this case was designed and manufactured by Honeywell and sold to Republic Heater Co. (Republic). Republic attached the valve to a Republic water heater. In 1970, Josephine Pirkl purchased the water heater from Gamble-Skogmo in Foley, Minnesota, for use in her home. The heater was installed by Thomas Haley, a local appliance repairman who was recommended to Ms. Pirkl by Gamble-Skogmo, but who was not otherwise connected to the store. Written instructions provided with the heater called for the installation of a sediment trap ahead of the gas control valve so as to prevent contaminants contained in the flow of gas from reaching the valve. However, Haley did not read these instructions and did not install such a trap, testifying that he had not been in the habit of doing so.

On installation, Haley tested the valve and gas lines for leaks, but found none. Over the next 6 years, the water heater was used without incident by Josephine Pirkl and members of her family who stayed with her. However, at some point in 1975 or 1976, Ms. Pirkl became dissatisfied with the looseness of the control knob on its stem, which made it difficult to rotate. Pirkl called Haley to complain and, on his suggestion, brought the knob back to Gamble, asking for a replacement. She was unable to get one and continued to use the old knob. In the fall of 1976, Pirkl rented her house to Mr. William Smith, who lived there for the next 3½ years. On several occasions during that time, Smith allowed his tank of gas to run dry. Smith was able to rotate the control knob to re-

light the pilot the first time he ran out of gas. On subsequent occasions, the knob was too worn to use, and Smith rotated the gas cock by turning the stem with his fingers. About a year and a half after he began renting the house, Smith noticed a small flame coming from the gas control valve. To plug the leak indicated by the flame, Smith melted dark blue dental wax around the reset shaft, first removing a small cylindrical spring he noticed protruding. At subsequent times, when Smith needed to relight the pilot, the action of rotating the shaft from "on" to "off" would crack the wax seal, again allowing gas to escape. At these times, after lighting the pilot, Smith would remelt wax over the knob to seal the leak again. Smith estimates that he applied wax to the controls two to four times in the remaining time he spent at Pirkl's residence.

Smith left when Pirkl moved back to the house in April 1980. On April 11, 1980, Pirkl asked William Sherk, an appliance repairman who was working on a water pump, to relight the water heater. Sherk noticed a gas leak after he depressed the reset shaft, breaking the wax seal. At this point, he refused to relight the heater and shut off the gas at the main tank outside. Sherk advised Pirkl that the valve was dangerous and should be replaced. Pirkl stated that she could not afford to make the replacement. Instead, that same day, April 11, Pirkl called Haley to relight the pilot. When Haley arrived, he found the knob off the control and so worn as to be of little use. Haley rotated the gas cock with his finger from "on" to "pilot," lit the pilot light and turned it back to "on." Haley then noticed a small gas leak. Haley told Pirkl to replace the valve, but she refused, stating that she didn't want to spend the extra money to replace the heater since she was in the process of selling her home. To stop the leak, Haley put industrial adhesive around the reset shaft, told Pirkl that she needed to replace the valve and said that he would not service the water heater again.

On July 23, respondent Michael Balder, his two small children and his mother,
Pirkl, went out to the farmhouse so respondent could gather wood. Apparently, on arrival at the farmhouse, Michael Balder and his children went out to cut wood while Pirkl began preparing lunch. At approximately 10:00 or 10:30 a.m., Haley's wife, Marie Haley, received a phone call from Pirkl, who said she smelled gas and wanted to speak with Mr. Haley. Marie Haley told Pirkl to turn off the gas and that Mr. Haley would call her back. Mr. Haley got home at about 11:00 a.m. and returned Pirkl's phone call. Haley told Pirkl to check the pilot light. When Pirkl reported that the light was out, Haley told her to shut off the gas and call Gamble about getting a new heater. Val Gondeck, a clerk at Gamble, recalls receiving a phone call from Pirkl sometime between 12:30 and 1:30 p.m. on July 23 and that Pirkl said she smelled gas. Gondeck advised Pirkl to shut off the gas to the house at the main tank. When she objected that this would make it impossible to cook food, Gondeck told her that she might not have a house to cook in. Sometime in the next 45 minutes to 1 hour, Gondeck heard fire sirens responding to the explosion at the farmhouse.

It was Michael Balder's testimony that he arrived at the farmhouse from the woods at about 12:00 or 12:15 p.m.; that, in discovering there to be no hot water, he and his mother went downstairs only to find the pilot light extinguished; that his mother then called Gamble; that, after the conversation, she told him that they had the choice of shutting the gas off at the main tank outside or shutting the valve with a pair of pliers downstairs. Michael Balder went on to state that, after this conversation, at about 12:30 p.m., he went back down to the basement. When he reached the bottom of the stairs, the gas exploded.

On inspection, the gas valve proved to be missing several parts, and a particular rubber O–ring was misplaced. Adhesive and wax were found adhering to the reset shaft, preventing a safety valve from closing when the pilot light was extinguished.

Michael Balder and his wife, Zita Balder, subsequently brought suit for damages against Honeywell. Also joined as defendants were Thomas Haley, Gamble-Skogmo, Inc., Republic Heater Co. and Josephine Pirkl.

At trial, respondents and appellant advanced different theories to explain the cause of the accident. Appellant's experts contended that, prior to 1976, some unknown person had taken apart the gas valve, removed several parts and then improperly reassembled the valve, allowing a small leak to develop around the top of the control valve. Appellant viewed the decision of Smith and Haley to seal the leak with wax and then cement the safety valve in place, which allowed gas to collect and led to the explosion, as an unforeseeable abuse of the valve. Respondents' experts argued that Honeywell's design of the gas valve made it likely that contaminants in the gas, particularly copper sulfide, infiltrated the gas valve, causing small gas leaks and immobilizing the safety valve. These experts also contended that Honeywell's control knobs were made of cheap and easily broken plastic that wore out quickly, forcing users to turn the reset shaft with their fingers, further leading to small leaks around the valve. Respondents finally contended that the attempts by Haley and Smith to repair the leak were likely given appellant's failure to warn against using the valve without a control knob and that it was adhesive, wax, plus copper sulfide contaminants that stopped the safety valve from working correctly. After an 8-week trial of respondents' claims against Honeywell for negligence, strict liability and punitive damages, as well as a private cause of action under the Consumer Product Safety Act, the jury found Honeywell not negligent, dividing fault among Michael Balder (20%), Josephine Pirkl (45%) and Thomas Haley (35%). Damages were assessed at $2,250,000. The trial court subsequently denied motions for a new trial or judgment notwithstanding the verdict. The court of appeals reversed the trial verdict in part, finding Honeywell negligent for failure to warn and remanded for a new jury determination of cause.

A preliminary issue is whether the court of appeals properly considered Michael Balder's claim that Honeywell negligently failed to warn of dangers associated with its gas valve. Though this claim was tried and decided by the jury, respondents' attorneys did not brief or argue Honeywell's alleged failure to warn before the court of appeals nor was it argued by appellant. Respondents' statement of the case presented to the court of appeals noted only that they proposed to raise the issue of the sufficiency of the evidence for the trial verdict.

This court has previously held that issues not argued in briefs "must be deemed waived" on appeal. *Melina v. Chaplin,* 327 N.W.2d 19, 20 (Minn.1982). However, all cases cited for this proposition in *Melina* were decided before Minnesota's court of appeals began functioning. We have never decided whether such waiver was mandatory or discretionary with the court of appeals. Notably, in *Louden v. Louden,* 221 Minn. 338, 22 N.W.2d 164 (1946), the rule is stated that: "An assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief is waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection." *Id.* at 339, 22 N.W.2d at 166 (citations omitted). Thus, the court of appeals had some discretion to decide the failure to warn issue *sua sponte*. *See also* Minn.R.Civ.App.P. 103.04 ("[appellate courts] may review any other matter as the interest of justice may require").

■ However, even if the court of appeals had the discretion to determine the failure-to-warn issue, in this case, that discretion was not appropriately applied. One of Honeywell's claims at trial was that, if there were a duty to warn, the warnings were the responsibility of Republic and not Honeywell. Honeywell chose not to cross-appeal against Republic before the court of appeals, apparently relying on respondents' neglect of the warnings issue. At this

point, it seems difficult, if not impossible, to have Republic again included as a party. Thus, the court of appeals should not have reversed on the ground of warnings and should have held that respondents waived that issue.

▮ However, it was an error of the trial court to allow the existence of a duty to warn to go to the jury in the first place. This court recently held that the existence of a duty to warn is a legal question to be determined by the judge, not the jury. *Germann v. F.L. Smithe Machine Co.*, 395 N.W.2d 922 (Minn.1986). Only issues such as the adequacy of the warning, breach of duty and causation remain for jury resolution. It is too late, however, for respondents to object to the jury's resolution of the issue against them. Respondents did not object at trial and, indeed, submitted proposed instructions on this issue for the jury which were given by the trial court. Parties are bound by the law of the case to the theory they propound. *Atlantic Mut. Ins. Co. v. Judd Co.*, 380 N.W.2d 122, 124 (Minn.1986).

The standard a court must follow to determine whether a duty to warn exists is set out in *Germann*. The court

> goes to the event causing the damage and looks back to the alleged negligent act. If the connection is too remote to impose liability as a matter of public policy, the courts then hold there is no duty, and consequently no liability. On the other hand, if the consequence is direct and is the type of occurrence that was or should have been reasonably foreseeable, the courts then hold as a matter of law a duty exists.

*Germann*, 395 N.W.2d at 924. There is "no duty to warn of an improper use that could not have been foreseen." *Frey v. Montgomery Ward & Co., Inc.*, 258 N.W.2d 782, 788 (Minn.1977).

▮ In this case, the jury found that the valve had left the factory in a nondefective condition and that Honeywell had no information up to July 23, 1980, the date of the injury, reasonably supporting the conclusion that the V5130 valve contained a defect which could create a substantial hazard. Therefore, the jury must have concluded that there was no duty to warn because there was no particular hazard against which to warn. The trial court, in upholding the verdict, implicitly so found as well. The court of appeals substituted its own finding for that of the trial court, and it is difficult for us to understand the basis for that court's finding. There was certainly sufficient evidence to support the jury's verdict. *See Lamke v. Louden*, 269 N.W.2d 53, 56 (Minn.1978).

▮ Furthermore, we find, as a matter of law, that there was no causal relationship between the failure to warn and the injury sustained by Michael Balder, even assuming, contrary to the jury's findings, that Honeywell had a duty to warn. Josephine Pirkl, owner of the water heater, ignored the direct verbal warnings of William Sherk, Val Gondeck and Mr. and Mrs. Haley to shut off the gas. Pirkl's son, Michael Balder, was present when his mother received several of the warnings to shut off the main gas line. There is disputed testimony as to the nature and timing of the events directly preceding the explosion. Balder claimed that he went back downstairs at 12:30 or 12:45 p.m., shortly after his mother's phone call with Val Gondeck. He testified that the explosion occurred immediately after he reached the bottom of the stairs. However, appellant presented contrary evidence based on medical reports and the testimony of neighbors that the explosion occurred later—between 1:30 and 2:00 p.m.—20 minutes or more after the conversation with Val Gondeck. Moreover, a medical statement taken from the ambulance driver stated that Balder had been burned while attempting to repair a gas line. Thus, the jury could well have believed, as appellant suggested, that the gas ignited while Balder was working on the valve or the gas line trying to shut off the gas. This would explain that part of the jury's verdict that made Balder 20% at fault for the explosion. The odor of gas Ms. Pirkl discussed in her earlier telephone conversations of that day must have

been noticeable by Balder if he spent anytime in the basement. The cumulation of the warnings and the smell of gas should have made the danger obvious. The foolishness of attempting to fix a gas line that was leaking significant amounts of gas is apparent. There is no reason to believe that a warning label would have done anything more to impress Balder or his mother. Thus, the issue of causation in this case does not require a jury determination.

Accordingly, the court of appeals is reversed, and the judgment of the trial court is reinstated.