BAKER DOMES, A DIVISION OF R.M. BAKER COMPANY, Respondent,

v.

Gary E. WOLFE, et al., Appellants,

Wayzata Bank & Trust, Respondent.

No. C8–86–1880.

Court of Appeals of Minnesota.

April 14, 1987.

Michael Nekich, Leonard, Street & Deinard, Minneapolis, for respondent Baker Domes.

John L. Weyland, Thomas F. Coleman, Jensen & Weyland, P.A., Minneapolis, for appellants.

Stewart A. Perry, Wayzata, for respondent Wayzata Bank & Trust.

Heard, considered and decided by LANSING, P.J., and WOZNIAK and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Baker Domes (Baker) sued Gary E. Wolfe and Marty Burns-Wolfe (hereafter Wolfe) alleging breach of contract and unjust enrichment. Baker Domes also sued Wolfe's bank, Wayzata Bank and Trust (Bank) as a third-party beneficiary of the loan agreement between the Bank and Wolfe. Wolfe denied breaching the contract and counter-claimed, alleging breach of contract on the part of Baker Domes with resulting damages. The trial court found Wolfe breached the contract and entered judgment in the amount of $44,413.75 against Wolfe. The trial court found no liability on the part of Wayzata Bank and Trust. Wolfe moved for amended findings or, in the alternative, for a new trial which was denied and Wolfe appeals. We affirm in part and remand on the issue of damages.

## FACTS

On September 30, 1983, Wolfe entered into an agreement with Baker for the construction of a dome home on a lot to be purchased by Wolfe. The purchase price for the home (excluding lot) was $112,000 to be paid as follows:

$1,000.00 earnest money, paid when purchase agreement was signed.

$30,000.00 paid by Wolfe through Bank after loan approval.

$50,000.00 when "the house and garage have been framed, sided and shingled, and all windows and doors have been installed."

$32,000.00 balance to be paid when house and garage have been completed.

The agreement provided that Wolfe obtain a construction loan by October 26, 1983. The parties also agreed to a clause which stated:

Construction shall be completed within 120 days from start of construction foregoing an act of God or blizzard conditions.

Wolfe also signed a rental agreement with Baker to rent a completed dome for a monthly rent of $600 until completion of construction with a $300 monthly credit towards the purchase price of his home.

Wolfe did not receive a loan commitment from the Bank until November 16, 1983. A check was issued to Baker for $30,000 and in return, Baker issued a lien waiver for the full amount. Based on previous dealings with each other it was understood by Baker and the Bank that this waiver would be replaced by more specific lien waivers and evidence of payment from Baker and its subcontractors. However, there was no written agreement to this effect.

Baker began work on the construction site November 17, 1983, by clearing trees and shrubs. Under the terms of the contract Baker had until March 16, 1984, to complete the home (120 days from the start of construction). However, Baker encountered soil problems which required significant adjustment in excavating and on March 16th, they were still working on the foundation.

On July 2, 1984, a Bank officer wrote a letter to Baker's attorney indicating that the home was complete to the second draw stage but they would not disburse payment until Wolfe authorized it. No mention was made of any deficiencies in the lien waivers or necessity for additional lien waivers. Wolfe refused to authorize payment, claiming that Baker had not produced lien waivers for the initial $31,000 payment. Some major early bills, including a bill for excavation totaling over $20,000, had not been paid. Wolfe's refusal prompted Baker to walk off the job and refuse to continue. In mid-August, Gary Wolfe took over as general contractor and completed the house.

Wolfe then had the Bank turn over the balance ($70,000) of the construction loan to him with an additional $10,000. Wolfe used these funds to pay subcontractors hired by him to complete the home. Wolfe also used $14,585.12 to pay for supplies purchased while Baker was in charge of construction. Wolfe did not pay any of the other unpaid subcontractors who worked on the building up to the completion of the second draw stage.

The trial court ruled that Wolfe breached the contract with Baker and that Baker was entitled to recover the reasonable value of work and materials supplied. The court found that the Bank had no liability to Baker and that Wolfe failed to prove the counterclaim against Baker.

## ISSUES

1. Did Baker breach the contract by failing to complete the home in 120 days, and by walking off the job?

2. Did Wolfe breach the contract by refusing to authorize payment of the second draw?

3. Is the judgment of $44,413.75 supported by the evidence?

## ANALYSIS

### I

█ At trial, Wolfe argued that Baker breached the contract by failing to complete the home within the 120 days specified in the contract. The contract provided an exception for delay caused by "blizzard or an act of God." The trial court found that Baker failed to complete the building on schedule because Wolfe was late in obtaining the loan commitment; Wolfe failed to remove an old building on the lot; severe weather and subsurface problems. The evidence supports these findings.

Wolfe argues that this was a "time is of the essence" contract and therefore Baker's failure to finish the home for any reason was a breach of the contract. The contract does not state that time was of the essence and the fact that a date was set for completion does not necessarily make it so. *See Indianhead Truck Line Inc. v. Hvidsten Transport, Inc.,* 268 Minn. 176, 186, 128 N.W.2d 334, 342 (1964); 17 Am.Jur.2d *Contracts* § 333 (1964). In addition, by allowing the work to continue past the time for completion, Wolfe waived the materiality of time and could only claim damages resulting from the delay. *See id.* at § 388. Wolfe produced no proof of such damages.

### II

Baker, on the other hand, claims that Wolfe breached the purchase agreement by refusing to authorize payment of the $50,000 second draw. All parties acknowledged that by July 2, 1984, the house had reached the $50,000 stage and the Bank was ready to disburse the funds as soon as it received Wolfe's authorization.

Wolfe argues that under Minnesota law he was entitled to withhold money from the contractor to pay subcontractors. Minn. Stat. § 514.07 (1984) provides:

The owner may withhold from his contractor as much of the contract price as may be necessary to meet the demands

of all persons, other than the contractor, having a lien upon the premises for labor, skill, or material furnished for the improvement, and for which the contractor is liable. He may pay and discharge all these liens and deduct the cost of them from the contract price. No owner shall be required to pay his contractor until the expiration of 120 days from the completion of the improvement, except to the extent that the contractor furnishes to the owner waivers of claims for mechanics' liens signed by persons who furnished labor, skill or material for the improvement and who have given the notice required by section 514.011, subdivision 2.

At the time Baker walked off the job (July 1984), lien waivers and paid receipts totaling approximately $29,000 were available, but $23,335 of that amount was for Baker labor and Baker dome kits. Consequently, Wolfe would not authorize payment until lien waivers were received from subcontractors although he did pay $14,585.12 directly to building suppliers. Subcontractors are required to file a notice of a potential lien within forty-five days of the time the lien claimant commences work. Minn. Stat. § 514.011, subd. 2 (1984). Nearly all of Baker's subcontractors began work more than 45 days prior to July 2, 1984. Therefore, as of that date no additional valid lien notices could be filed, but Wolfe still refused payment to Baker and instead had the Bank turn the balance of the construction loan ($70,000) over to him to complete the house.

■ Wolfe could legitimately withhold from Baker the $14,585 he paid to Baker's suppliers. However, his use of the balance of $35,415 was to complete the house himself. The record supports the finding of contract breach.

When Wolfe failed to authorize payment, Baker refused to perform after July 2, 1984. In Minnesota,

[a] party to a contract who is entitled to progress payments may treat the failure to make such payments when due as a breach of the contract which will justify him in refusing to perform further and

which will give legal basis for a claim for the reasonable value of the services performed or material supplied pursuant to the contract.

*Palmer v. Watson Construction Co.,* 265 Minn. 195, 202–03, 121 N.W.2d 62, 67 (1963) (citation omitted). The alternative is to continue performance and recover the contract price after full completion. *Id.* at 203, 121 N.W.2d at 67. If the party is ready, willing and able to perform, but is prevented from doing so by the other party, he may recover damages for breach of contract. *Id.* However,

nonpayment of installment obligations is not in and of itself such prevention of performance as will make possible suit for loss of profits * * *.

*Id.* Therefore, as the trial court properly decided, Baker's recovery should be the reasonable value of services and materials provided.

### III

■ Wolfe acknowledges in his post-trial brief "that Baker is entitled to some additional compensation under a theory of quantum merit," but Wolfe disputes Baker's charges of $24,505 for four dome kits and labor costs of $12,949.19. The record supports labor costs of only $10,820.00.

The dome kits were not an item specifically discussed in the purchase agreement but are supposed to consist of all building materials necessary to complete a dome shell. The evidence indicated that some of the bills submitted, in addition to the dome kit and some of the labor was for "kit manufacturing." Baker also testified that "parts" of one of the supplier's bills paid was for dome kits and that the dome kit price was the retail price, which indicates that the price included some profit. Since we are unable to determine exactly how the trial court valued these dome kit costs, we remand this issue to the trial court for specific findings as to what are reasonable charges, excluding double billings and profits on materials.

The trial court's findings crediting Wolfe with payments of $1,000 earnest money, $30,000 first draw, $4,669.68 in loan costs

Baker was responsible for, a $2,400 rent credit and the $14,585.12 paid by Wolfe to Baker's suppliers are supported by the record.

In post-trial brief, Wolfe argued that Baker is not entitled to pre-judgment interest. However, this issue was not mentioned in the letter brief, appellant's statement of the case or at oral argument. Consequently, this issue was not considered. *See Balder v. Haley*, 399 N.W.2d 77, 80 (Minn.1987).

### DECISION

Baker is entitled only to the reasonable value of materials and labor provided. We remand for specific finding on damages, noting only $10,800 in labor costs is supported by the record, double billing must be excluded, and the award may not include any profit.

Affirmed in part and remanded on the issue of damages.