Bryan C. HUBER, Respondent,

and

Liberty Mutual Insurance Company, Intervenor,

v.

NIAGARA MACHINE AND TOOL WORKS and the Satterlee Company, Defendants,

and

Allen–Bradley Company, petitioner, Appellant.

No. C4–87–1725.

Supreme Court of Minnesota.

Oct. 21, 1988.

Michael R. Cunningham, Minneapolis, for Allen–Bradley.

John W. Carey, Fairfax, for Bryan C. Huber.

James M. Riley, Minneapolis, for Niagara Machine & Tool Works & Satterlee Com.

Jeffrey M. Baill, Minneapolis, for Liberty Mut. Ins. Co.

POPOVICH, Justice.

Bryan C. Huber brought this product liability action against the manufacturer (Niagara Machine and Tool Works) and distributor (the Satterlee Company) of a punch press, and Allen–Bradley Company, manufactuer of a foot switch mechanism used to operate the press. Huber alleged negligent design of the press and foot switch, breach of express and implied warranties, strict liability, and failure to warn of dangers associated with the use of the machine. At the hearing on a summary judgment motion, the plaintiff conceded that no issues other than the duty to warn were appropriate as to Allen–Bradley. Pursuant to Rule 54.02, Minn.R.Civ.P, the trial court granted summary judgment for Allen–Bradley, holding that Allen–Bradley did everything reasonably possible to make a safe product, any warning would have had little or no effect, and that the foot switch had been materially and significantly modified subsequent to its original design and manufacture. The Minnesota Court of Appeals reversed, holding Allen–Bradley had a duty to warn. *Huber v. Niagara Machine and Tool Works*, 417 N.W.2d 740 (Minn.App.1988). We reverse the court of appeals, and find Allen–Bradley had no duty to warn.

## I.

On October 14, 1981, Bryan C. Huber suffered serious injuries to his hand while operating a Niagara Punch Press activated by an Allen–Bradley foot switch, both of which were owned by Huber's employer, R & M Manufacturing. At the time of the accident Huber had been working at R & M for less than two weeks, but had used this particular press before and had been instructed by his supervisor on its proper use. He also had been warned by his supervisor to keep his hands out of the die area of the machine while operating the press and had read and understood a warning sign on the front of the machine carrying a similar message.

At the time of the accident, Huber was conducting a metal bending operation which involved feeding a rectangular piece of metal into the press until it was lined up with pins at the back of the machine. Holding the metal with his hands outside the die area, Huber would activate the press by depressing the foot switch located on the floor in front of the machine. Having trouble getting the metal to lie flat in the press, since the pieces were badly warped, Huber put his hand in the die area of the press to straighten the metal. At the same time his foot slipped on the floor, which had become wet due to some metal washing activities, and came down on the treadle of the foot switch, activating the press.

The foot switch Huber was using had originally been manufactured by Allen–Bradley with protective safety devices on all sides. These devices included a shield on the sides and top and a front guard or spring-loaded door which the operator must flip back with the front of his foot before sliding it in to activate the treadle. The foot switch had been delivered to R & M Manufacturing for use with the punch press with all of these safety devices intact and permanently attached. However, sometime before the accident the front guard of the foot switch had been removed and was missing on the day of the accident.

## II.

This case involves the issue of a component manufacturer's duty to warn users of its product that safety devices permanently attached to the product should not be re-

moved and that extra safety precautions—which are the responsibility of the user's employer, not the component manufacturer—should be instituted.

### III.

On an appeal from summary judgment, the role of the reviewing court is to review the record for the purpose of answering two questions: (1) whether there are any genuine issues of material fact to be determined, and (2) whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). When reviewing a summary judgment, the reviewing court must view all evidence in the light most favorable to the nonmoving party. *See Nord v. Herreid*, 305 N.W.2d 337, 339 (Minn.1981).

■■■ Failure to warn is a cause of action separate from defective design. *See Kallio v. Ford Motor Co.*, 407 N.W.2d 92, 99 (Minn.1987). We have held that determining whether a manufacturer has a legal duty to warn users of dangers related to the use of its product without safety devices is a question of law and therefore appropriate for this court to decide. *Germann v. F.L. Smithe Machine Co.*, 395 N.W.2d 922, 924 (Minn.1986). Only if there is a specific factual dispute concerning a manufacturer's awareness of a risk should the issue be submitted to the jury for its resolution. *See Lundgren v. Fultz*, 354 N.W.2d 25, 28 (Minn.1984); Steenson, *Products Liability in Minnesota—Design Defect and Failure to Warn Claims*, 14 Wm. Mitchell L.Rev. 443, 483–86 (1988).

■■■ In *Germann* we set forth the standard for determining whether a manufacturer has a duty to warn:

> [T]he court goes to the event causing the damage and looks back to the alleged negligent act. If the connection is too remote to impose liability as a matter of public policy, the courts then hold there is no duty, and consequently no liability. On the other hand, if the consequence is direct and is the type of occurrence that was or should have been reasonably foreseeable, the courts then hold as a matter of law a duty exists.

395 N.W.2d at 924. This standard requires a determination whether it was foreseeable to the manufacturer that the product would be used in a dangerous manner. There is no duty to warn of an improper use that could not have been foreseen. *Frey v. Montgomery Ward & Company*, 258 N.W. 2d 782, 788 (Minn.1977).

■■■ Relying on our decision in *Germann*, plaintiff argues Allen–Bradley should have foreseen that the front guard on its foot switch would be removed. This case, however, differs significantly from the situation in *Germann*. In *Germann*, we held that a press manufacturer had a duty to warn operators of the danger of using its press without a properly attached and operating safety bar. 395 N.W.2d at 925. In determining foreseeability, we relied on the fact that the press was delivered by the manufacturer unassembled and the safety bar was removable. *Id.* The design of the press also required that the safety bar be periodically removed in order to service the machine. *Id.* It was inevitable that the safety bar would be removed at some time and the risk was high that it might not be properly reattached. *Id.* But in the present matter Allen–Bradley's foot switch was delivered by the manufacturer fully assembled. All safety devices on the switch were permanently attached and did not require removal for any type of maintenance. The circumstances did not make it foreseeable to Allen–Bradley that such misuse would occur.

In *Westerberg v. School District No. 792*, 276 Minn. 1, 9–10, 148 N.W.2d 312, 317 (Minn.1967), we said:

> If a chattel is sold that is free from defects in manufacture and design and is not dangerous if used as intended, the manufacturer is not liable for results caused by improper use of the chattel or changes made in its construction without the manufacturer's knowledge which makes it dangerous. Nor is there any duty to warn of nonexisting dangers, or dangers that are obvious to anyone. If the chattel is safe when sold, a manufacturer is not required to anticipate or foresee that a user will alter its condition so

as to make it dangerous, or that he will continue to use it after it becomes dangerous due to alteration in safety devices intended to protect the user from harm.

We distinguished *Westerberg* in *Germann* because it was only remotely foreseeable to the manufacturer that the safety lid on an extractor would be altered or improperly maintained.

This case more closely resembles the facts of *Balder v. Haley*, 399 N.W.2d 77 (Minn.1987), where we upheld a jury verdict relieving a valve manufacturer of any duty to warn users of dangers associated with misuse of its product. Since the manufacturer had no knowledge of defects when its product left the factory, there was no hazard against which to warn. *Id.* at 81. In the present case Allen–Bradley also sold a product in a nondefective state and could not have foreseen any dangers associated with its modification and misuse.[1]

The court of appeals found that such misuse was foreseeable since removal of the front guard would allow the press operator to speed up production. *Huber*, 417 N.W.2d at 743. On reviewing the record, however, we find no facts to substantiate this finding.

■ The court of appeals also found that Allen–Bradley had a duty to warn users of its foot switch that its use with a press would override point of operation safety mechanisms. Under Occupational Safety and Health Administration (OSHA) standards, point of operation safety mechanisms are required for the operation of mechanical power presses, 29 C.F.R. § 1910.217(c) (1987):

It shall be the responsibility of the employer to provide and insure the usage of "point of operation guards" or properly applied and adjusted point of operation devices on every operation performed on a mechanical power press.

29 C.F.R. § 1910.217(c)(1)(i) (1987). Point of operation "guards" consist of barriers erected to prevent an operator from placing any part of his body in the danger zone of the press. 29 C.F.R. § 1910.211(d)(32) (1987). Point of operation "devices" protect an operator by forcing him to manually activate switch controls located away from the danger zone before the press will operate, thus preventing him from placing parts of his body in the danger zone of the press while it is running. 29 C.F.R. § 1910.211(d)(11) (1987).

Under OSHA regulations it is the responsibility of the employer to insure that either point of operation guards or devices are used with every machine. Allen–Bradley had no duty to insure the use of such safety devices. Even if use of Allen–Bradley's foot switch would render certain point of operation devices ineffective since the operator would be free to place his hands in the danger zone of the press, it was the responsibility of the employer to insure that other point of operation guards were installed on the press itself. It was not reasonably foreseeable to Allen–Bradley that an employer would fail to comply with these OSHA regulations and therefore Allen–Bradley had no duty to warn about possible dangers of failing to provide proper point of operation safety mechanisms.[2]

We hold that under the facts of this case, Allen–Bradley had no duty to warn regarding the use of its foot switch with Niagara's mechanical power press. The trial

---

1. This holding is consistent with our prior decisions adopting the position that liability for failure to warn is based on principles of negligence. *See Germann v. F.L. Smithe Machine Company*, 395 N.W.2d 922, 926 n. 4 (Minn.1986); *Bigham v. J.C. Penney Co.*, 268 N.W.2d 892, 897 (Minn. 1978); *Holm v. Sponco Manufacturing*, 324 N.W.2d 207, 214–15 (Minn.1982) (Simonett, J., concurring in part and dissenting in part).

2. This reasoning does not conflict with our prior decisions establishing that the manufacturer of a finished product has a duty to warn ultimate users of dangers presented by its product and this duty may not be delegated to an intermediary. *Cf. Hill v. Wilmington Chemical Corporation*, 279 Minn. 336, 341, 156 N.W.2d 898, 902 (Minn.1968).

court correctly granted summary judgment for Allen–Bradley, and the decision of the court of appeals is reversed.

REVERSED.

COYNE, J., took no part in the consideration or decision of this case.