Rosalind HOLOWATY and Boris Holowaty, Plaintiffs,

v.

MCDONALD'S, CORPORATION and McRick, Inc., Defendants.

No. Civ.4–96–925(JRT/RLE).

United States District Court, D. Minnesota.

July 13, 1998.

Mary W. Mason, Law Office, St Paul, MN, William D. Harper, Law Office, Woodbury, MN, David A. Shulman, Gartner & Shulman, Rochester, MN, for Plaintiffs.

Scott P. Drawe, Stich, Angell, Kreidler & Muth, Minneapolis, MN, for Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' SUMMARY JUDGMENT MOTION

TUNHEIM, District Judge.

In this diversity case, plaintiff Rosalind Holowaty seeks to recover for injuries she sustained when a cup of coffee purchased at a McDonald's restaurant spilled in her lap. Mrs. Holowaty and her husband Boris brought this action against McRick, Inc., the owner of the restaurant where they purchased the coffee, and McDonald's Corporation, the franchisor. Plaintiffs claim that the coffee was defective because it was excessively hot and that defendants did not adequately warn plaintiffs that severe burns could result from a spill. Defendants move for summary judgment. For the reasons explained below, defendants' motion is granted.

## FACTS

Plaintiffs are Canadian citizens who reside in Saskatchewan. Both plaintiffs have been coffee drinkers for many years. Mrs. Holowaty has been drinking two to three cups of coffee a day for fifteen years, and her husband has been drinking two to three cups per day for over twenty years.

On July 9, 1995, plaintiffs were traveling through Rochester, Minnesota when they stopped at a McDonald's restaurant for breakfast. Mr. Holowaty purchased food, juice and a large cup of coffee. A McDonald's employee placed the drinks in a beverage tray and gave them to Mr. Holowaty. The coffee was in a Styrofoam cup covered by a lid. The cup and lid contained warnings that stated "HOT!" and "CAUTION: CONTENTS HOT."

Before leaving the restaurant, Mr. Holowaty removed the lift tab on the lid of the coffee cup, creating an opening in the drink. Plaintiffs then carried the beverage tray and food items to their car. When they reached the vehicle, Mrs. Holowaty sat in the passenger seat with the beverage tray on her lap.

Plaintiffs drove down a steep decline when they exited the parking lot. As they traveled down the slope, the coffee tipped and spilled about half its contents onto Mrs. Holowaty. The coffee soaked into Mrs. Holowaty's shorts and caused second degree burns to her upper and inner thighs. The burns took two months to heal, and Mrs. Holowaty has permanent scars.

Plaintiffs commenced this action to recover for the injuries Mrs. Holowaty sustained. Plaintiffs contend that the coffee was defective because it was excessively hot and that defendants did not provide adequate warnings about the severity of the burns that could result from a spill. Although plaintiffs admit that they knew the coffee would be hot and that it could cause burns, plaintiffs claim that reasonable consumers do not know that the coffee can produce second-degree burns.

Plaintiffs' complaint is premised on four legal theories: design defect, failure to warn, negligence, and breach of warranty. Plaintiffs claim McRick is liable as the owner of the restaurant where plaintiff purchased the coffee. Plaintiffs contend McDonald's is liable because it controlled the temperature of the coffee, and because it was engaged in a joint venture with McRick's.

Defendants move for summary judgment on all plaintiffs' claims. In support of their motion, defendants present expert testimony from a coffee brewing specialist, Ted R. Lingle. According to Lingle, the temperatures employed to "brew" and "hold" coffee are an exact science. The "brewing temperature" is the temperature at which water and coffee grounds blend together to make coffee. Unless water is heated to the proper temperature, the flavor will not be extracted from the coffee grounds. The optimal temperature for brewing coffee is between 195 and 205 degrees Fahrenheit. The coffee industry recommends brewing coffee within this temperature range, and brewing temperatures between 195° and 205° are standard in commercial coffee equipment.

The "holding temperature" is the temperature at which the coffee is maintained after brewing. Coffee should be held at a temperature between 175 and 185 degrees for maximum flavor. The standard holding temperature in the industry is within the same temperature range. Most home coffee makers hold coffee between 170 and 190 degrees.

About one month prior to Mrs. Holowaty's accident, McDonald's reduced its brewing temperature from 195–205 degrees to 185–195 degrees. The coffee loses about 10 degrees during the brewing cycle. Thus, the resulting holding temperature at McDonald's restaurants is between 175 and 185 degrees.

The only evidence in the record as to the temperature of the coffee served to plaintiffs is the testimony of the manager of the McDonald's restaurant where plaintiffs purchased the coffee. At the time of the accident, it was the manager's practice to set the brewing temperature at 190 degrees. The corresponding holding temperature would have been approximately 180 degrees. These temperatures are consistent with the temperatures McDonald's required of its franchisees at the time of the accident.

Plaintiffs rebut this evidence with the report of Dr. Kenneth Diller, a professor of biomedical and mechanical engineering. Ac-

cording to Diller, second-degree burns will result in one second if 158–degree coffee comes into contact with bare skin. In Diller's opinion, "the risk of a thermal burn associated with serving coffee at temperatures in the range of 180° to 190° F is unacceptable." From the perspective of lowering the probability of thermal burns, Diller states that "150° F is a much safer temperature for serving beverages, and leading burn experts have recommended a temperature of 135° or lower."

## ANALYSIS

### I. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. It states, in pertinent part:

> [Summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Initially, the movant bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In evaluating the movant's showing, the evidence offered by the non-moving party is to be believed and all justifiable inferences therefrom are to be drawn in the light most favorable to that party. *Matsushita Elec. Indus. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Where a moving party makes and supports a motion for summary judgment in accordance with Rule 56, a party opposing the motion may not rest upon the allegations or denials of its pleadings; rather, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 256, 106 S.Ct. 2505; *Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir.1995). The nonmoving party "must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial." *Wilson v. Southwestern Bell Tele. Co.,* 55 F.3d 399, 405 (8th Cir.1995).

### II. Design Defect

Plaintiffs contend that the coffee they purchased was defective because it was excessively hot. Defendants argue that heat is an inherent quality of coffee, and that the coffee plaintiffs purchased was no hotter than coffee is regularly served. For these reasons, defendants contend that the coffee was not defective. The Court agrees and grants defendants' motion for summary judgment on plaintiff's design defect claim.

■ Minnesota courts analyze design defect claims under a "reasonable care balancing test." *Holm v. Sponco Mfg., Inc.,* 324 N.W.2d 207 (Minn.1982). To prevail under the test, the plaintiff must show: 1) that the product was in a defective condition unreasonably dangerous for its intended use, 2) that the defect existed when the product left defendant's control; and 3) that the defect was the proximate cause of plaintiff's injuries. *Patton v. Newmar Corp.,* 538 N.W.2d 116, 119 (Minn.1995).

Because the product involved in this case is a beverage, defendants urge the Court to apply the consumer expectations test recommended by the drafters of the Minnesota Jury Instruction Guides. Under the consumer expectations test, food is considered defective if the harm-causing characteristic of the food "would not have been expected by a reasonable consumer." 4 Minnesota Practice, *Jury Instruction Guides* 126 (3d ed. Supp.1997).

Plaintiffs claim the consumer expectations test applies only in cases of adulterated food. Because defendants intended to serve the coffee at the temperature that caused Mrs. Holowaty's injuries, plaintiffs argue that the coffee was not "adulterated," and that the consumer expectations test does not apply.

Minnesota courts have not had opportunity to consider the test recommended in the jury instruction guides. Thus, it is unclear whether the Minnesota Supreme Court would deviate from the reasonable care balancing test in this case. Generally, this Court would need to determine which test the Minnesota Supreme Court would apply. *See Novak v. Navistar Intern. Transp. Corp.*, 46 F.3d 844, 847 (8th Cir.1995). However, because defendants are entitled to summary judgment under either test, the Court need not make that determination. The Court will discuss the reasons defendants are entitled to summary judgment under each test in turn.

### A. Reasonable Care Balancing Test

 A product suffers from a design defect under the reasonable care balancing test if the manufacturer failed to exercise due care to avoid an unreasonable risk of harm arising from foreseeable uses of the product. *See Bilotta v. Kelley Co., Inc.*, 346 N.W.2d 616, 621 (Minn.1984). A product is not defective merely because it is capable of causing injury.[1]

 To prevail under this standard, plaintiffs need to show that the coffee they purchased was unreasonably dangerous because it was hotter than it should have been. Defendants present evidence that the optimal temperatures for brewing and holding coffee are 195–205 degrees and 185–190 degrees, respectively, and that these brewing and holding temperatures are standard in commercial coffee sales. Defendants further present evidence that it was the practice of the manager of the subject McDonald's restaurant to set the brewing temperature at 190 degrees, with a resulting holding temperature around 180 degrees.

Although plaintiffs assert that the coffee they purchased was "excessively hot," plaintiffs have not presented evidence to support their allegation. Plaintiffs attempt to create a fact dispute concerning the temperature of the coffee through the testimony of Mr. Ho-

lowaty. Mr. Holowaty claims that the coffee was "far hotter than any I've seen anywhere." Mr. Holowaty's testimony is not sufficient to create a genuine issue of material fact concerning the temperature of the coffee. Unless Mr. Holowaty has an acute ability to judge the temperature of hot liquids, no reasonable jury could conclude that he was able to measure the temperature of the coffee simply by holding the cup. Thus, plaintiffs have not presented evidence that the coffee they purchased was hotter than the standard practice at the subject McDonald's would dictate. The standard practice produces coffee slightly lower in temperature than is typical in the commercial setting and within the range of holding temperatures found in most home coffee makers.

Plaintiffs have also failed to show that a reasonable restaurant owner would have sold coffee at a lower temperature. Plaintiffs rely on their expert, Kenneth Diller, in an attempt to show that a reasonable restaurant owner would have sold the coffee between 135 and 150 degrees. In his report, Diller opines that it is "unreasonable" to sell hot beverages at 180 degrees because there is less risk of injury if beverages are sold between 135 and 150 degrees.

Diller does not have expertise in coffee brewing and cannot offer any opinion about the possibility of brewing and holding coffee at the temperatures he recommends. Diller's testimony is tantamount to saying that it is safer to make steak knives that have dull edges. While it is true that dull steak knives are less likely to cause injury, the knives are "safer" because they lack a quality that is an inherent feature of a steak knife—a sharp edge. In this case, defendants have presented evidence that heat is an essential element of a quality cup of coffee. To rebut this evidence, plaintiffs would need to show it was possible for defendants to sell quality coffee at a lower temperature. Diller does not address this issue. Accordingly, Diller's tes-

---

1. Heat is an inherent feature of a cup of coffee. If coffee were considered "defective" merely because it is hot, then all products with injury-causing characteristics would be defective. Knives, matches and dynamite, for example, would be deemed defective regardless of their individual characteristics. Accordingly, the test is not whether a product is capable of producing injury, but whether a reasonable manufacturer would have designed the product in a different way to avoid a foreseeable risk of injury.

timony does not suggest that any restaurant owner would have selected a different brewing or holding temperature for the coffee.

For these reasons, plaintiffs have not shown that a reasonable restaurant owner in the position of defendants would have sold coffee at a lower temperature. Thus, defendants are entitled to summary judgment under the reasonable care balancing test.

## B. Consumer Expectations Test

Plaintiffs' design defect claim also fails under the consumer expectations test. A food product is considered defective under the consumer expectations test if the harm-causing characteristic of the product would not have been expected by a reasonable consumer. 4 Minnesota Practice, *Jury Instruction Guide* 126 (3d ed. Supp.1997). Plaintiffs have presented no evidence that the cup of coffee they purchased was hotter than normal. In fact, the only evidence in the record suggests that the temperature of the coffee was slightly lower than the average temperature of a cup of coffee in the commercial setting. Thus, plaintiffs' claim also fails under the consumer expectations test.

For these reasons, defendants are entitled to summary judgment under either the reasonable care balancing test or the consumer expectations test. The Court accordingly grants defendants' motion for summary judgment on plaintiffs' design defect claim.

## III. Failure to Warn

Next, plaintiffs contend that the coffee was defective because it was not accompanied by adequate warnings. Defendants offer two reasons why they are entitled to summary judgment on plaintiffs' failure to warn theory. First, defendants contend they did not have a duty to warn because the danger of burns is open and obvious. Second, defendants contend that plaintiffs have insufficient proof that the alleged inadequacy of the warnings caused Mrs. Holowaty's injuries. The Court agrees with both contentions and grants defendants' motion for summary judgment.

### A. Duty

A cause of action for failure to warn is separate from one for an allegedly defective product design. *Huber v. Niagara Mach. & Tool Works,* 430 N.W.2d 465, 467 (Minn.1988). Whether a duty to warn exists is a question of law for the Court. *Germann v. F.L. Smithe Mach. Co.,* 395 N.W.2d 922 (Minn.1986). In determining whether a duty exists, the Court:

> goes to the event causing the damage and looks back to the alleged negligent act. If the connection is too remote to impose liability as a matter of public policy, the courts then hold there is no duty, and consequently, no liability. On the other hand, if the consequence is direct and is the type of occurrence that was or should have been reasonably foreseeable, the courts then hold as matter of law a duty exists.

*Id.* at 924.

Although a manufacturer has a duty to warn of reasonably foreseeable dangers, there is no duty to warn if "the user knows or should know of potential danger." *Minneapolis Soc. of Fine Arts v. Parker-Klein Assoc. Architects,* 354 N.W.2d 816, 821 (Minn.1984), *overruled on other grounds by Hapka v. Paquin Farms,* 458 N.W.2d 683 (Minn.1990). Thus, where the alleged danger is open and obvious, Minnesota courts do not require a warning. *Mix v. MTD Products, Inc.,* 393 N.W.2d 18, 19 (Minn.Ct.App. 1986). As one Minnesota court explained, "There is certainly no usual duty to warn the purchaser that a knife or an axe will cut, a match will take fire, dynamite will explode, or a hammer may mash a finger." *Peppin v. W.H. Brady Co.,* 372 N.W.2d 369, 375 (Minn. Ct.App.1985) (quoting W. Prosser, *Handbook of the Law of Torts,* § 96 at 649 (4th ed.1971)). Because the dangers associated with a knife, axe, match and dynamite are obvious, there is no reason to think a warning would make the products any safer.

The Court holds that the risk of burns resulting from spilled coffee presents the same kind of obvious danger. The average person in the community knows that hot coffee can cause burns. Plaintiffs, in fact, admit that they were aware of the danger.

Plaintiffs contend defendants nevertheless had a duty to warn because the

risk of injury was more severe than a reasonable consumer would anticipate. Plaintiffs thought spilled coffee would only cause reddened skin and allege that reasonable consumers anticipate only minor burns. Because the public is not aware of the possibility of severe burns, plaintiffs argue defendants had a duty to warn. In essence, plaintiffs contend that a duty to warn exists if the foreseeable risk of injury is more severe than a reasonable person would anticipate, even if the risk of a less severe injury of the same type is open and obvious.

The Minnesota courts have not considered plaintiffs' argument.[2] If presented with the issue, the Court believes that the Minnesota Supreme Court would reject plaintiffs' argument. Minnesota courts have repeatedly held that there is no duty to warn of open and obvious dangers. *See, e.g., Hoeg v. Shore–Master,* 1994 WL 593919 (Minn.Ct. App.1994) (no duty to warn of elastic properties of a spring); *Mix,* 393 N.W.2d at 19 (no duty to warn of danger involved in reaching hand under running lawn mower); *Peppin,* 372 N.W.2d at 375 (no duty to warn that aluminum conducts electricity). An alleged difference in the anticipated degree of danger does not make the risk associated with use of the product any less obvious.

The discussion in *Moss v. Crosman Corp.,* 136 F.3d 1169 (7th Cir.1998) is instructive. In *Moss,* the parents of a child killed by a BB gun alleged that the BB gun was defective due to inadequate warnings.[3] The district court held that the BB gun was not unreasonably dangerous because the average person "is aware of the danger that a projectile fired from [a BB gun] could hit a person and cause serious injury." *Id.* at 1175.

On appeal, the *Moss* plaintiffs made the same argument plaintiffs advance here. Although they agreed that the average person is aware of the potential for serious injury, the plaintiffs in *Moss* argued that the same persons were unaware that a BB gun could cause death. The Court rejected the argument because the type of injury the average consumer would anticipate and the injury that resulted were different in degree, not in kind. The Court explained: "the fact that the gun caused death rather than serious injury (i.e. the loss of an eye or a flesh wound) ... does not transform the fundamental nature of the injury." *Id.*

The same analysis applies to the case at bar. The average consumer understands that coffee is hot, and that it will cause burns if it comes into contact with skin. The danger of burns remains apparent, even if the degree of injury is more serious than contemplated. Because the temperature of the coffee plaintiffs purchased was no hotter than is typically served in restaurants,[4] the Court holds that defendants did not have a duty to warn plaintiffs that the coffee could cause severe burns if spilled.

## B. Causation

Plaintiffs have also failed to show that a genuine dispute of material fact exists on the issue of causation. Thus, even if defendants did have a duty to warn, they would be entitled to summary judgment.

To prove causation, plaintiffs need to show that they would have acted differently if they had been warned of the risk of severe burns. The alleged failure to warn is not the cause of injury when the product user is actually aware of the danger

---

**2.** Plaintiffs argue that Minnesota courts recognize their theory. Plaintiffs rely on two cases to support their argument: *Ferguson v. Northern States Power Co.,* 307 Minn. 26, 239 N.W.2d 190 (1976) and *Jonathan v. Kvaal,* 403 N.W.2d 256 (Minn.Ct.App.1987). *Ferguson* and *Jonathan* are design defect cases, not failure to warn cases. Both decisions hold that the obviousness of a potential danger is one factor the trier of fact should consider in determining whether an alleged design defect is reasonable. Neither case addresses whether the degree of foreseeable injury is relevant in determining whether a duty to warn exists.

**3.** The child was killed when a BB struck him in the eye and entered his brain.

**4.** As already noted, plaintiffs have not presented any evidence that the coffee was hotter than coffee is normally served in the commercial setting. The Court need not consider whether a duty to warn would exist if the coffee were hotter than normal. The Court therefore declines to address that issue.

associated with use of the product. *Ramstad v. Lear Siegler Diversified Holdings Corp.,* 836 F.Supp. 1511, 1516 (D.Minn.1993) (directing verdict on failure to warn claim where plaintiff was fully aware of the dangers associated with use of grain auger); *Balder v. Haley,* 399 N.W.2d 77, 81–82 (Minn.1987) (holding that no causal relationship exists between injury and alleged failure to warn as a matter of law when plaintiff was aware of danger presented).

In *Balder v. Haley,* the plaintiff sought to recover for injuries he sustained when a water heater exploded. There was an odor of gas before the explosion, and plaintiff was present when warnings were given to turn off the gas line. *Id.* at 81. The plaintiff sued the manufacturer of the gas control valve on a failure to warn theory. The plaintiff claimed that the manufacturer had a duty to warn against using the valve without a control knob. *Id.* at 80.

The Minnesota Supreme Court held that there was no causal relationship between the alleged failure to warn and the injuries plaintiff sustained. *Id.* Because the warnings and the smell of gas should have made the danger obvious, the Court held that there was no reason to believe a warning label would have changed the result. *Id.*

■ The same is true here. Plaintiffs admit they were aware that the coffee was hot, and that it could cause burns if spilled. Plaintiffs also knowingly took the coffee into a moving vehicle, compounding the danger. A reasonable person taking hot coffee into a car would handle the coffee with care. Thus, even if defendants had included a warning that stated "DANGER: COFFEE CAN CAUSE SEVERE BURNS," there is no reason to believe that plaintiffs would have altered their conduct. Consequently, there is no genuine dispute of material fact on the issue of causation.

For these reasons, the Court grants defendants' motion for summary judgment on plaintiffs' failure to warn claim.

## IV. Negligence

In addition to the two strict liability theories discussed above, plaintiffs allege defendants were negligent. The negligence claim is premised upon the same conduct as the strict liability theories.

■ In *Bilotta v. Kelley Co.,* the Minnesota Supreme Court described the difference between strict liability and negligence claims:

> The distinction between strict liability and negligence in design-defect and failure-to-warn cases is that in strict liability, knowledge of the condition of the product and the risks involved in that condition will be imputed to the manufacturer, whereas in negligence, these elements must be proven.

346 N.W.2d at 622. Thus, strict liability is a broader theory of recovery than traditional negligence. *Id.* at 623.

■ As noted above, plaintiffs have not presented sufficient evidence to withstand summary judgment on their strict liability theories. The same defects exist in plaintiffs' negligence claim. The Court accordingly grants defendants' motion for summary judgment.

## V. Implied Warranty of Merchantability

Finally, plaintiffs contend defendants breached the implied warranty of merchantability.

■ The implied warranty of merchantability requires that goods be "fit for the ordinary purpose for which such goods are used." Minn.Stat. § 336.2–314(2)(c). The implied warranty of merchantability is breached when a product is defective to a normal buyer making ordinary use of the product. *Peterson v. Bendix Home Systems,* 318 N.W.2d 50, 52 (Minn.1982). A defect is "any condition not contemplated by the user which makes the product unreasonably dangerous to him." *Farr v. Armstrong Rubber Co.,* 288 Minn. 83, 179 N.W.2d 64, 69 (1970). A product is not defective when it is safe for normal handling and consumption. *Id.*

■ To prevail on their warranty claim, plaintiffs must prove that the coffee was defective. As discussed above, plaintiffs have not presented sufficient evidence to support their claim that the coffee was excessively hot. The Court accordingly grants defendants' motion for summary judgment.

For the foregoing reasons, the Court grants defendants' motion for summary judgment in its entirety. The Court need not consider the alternative arguments raised by McDonald's Corporation in support of summary judgment.

### ORDER

Based on the foregoing, and upon all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that defendants' motion for summary judgment [Docket No. 24] is **GRANTED** and plaintiffs' complaint is **DISMISSED WITH PREJUDICE.**

LET JUDGMENT BE ENTERED AC- CORDINGLY.