713 So.2d 818 (1998)
Nita OUBRE
v.
E-Z SERVE CORPORATION and Royal Indemnity Company.
No. 98-CA-61.
Court of Appeal of Louisiana, Fifth Circuit.
May 27, 1998.
*819 Martin E. Regan, Jr., New Orleans, for Plaintiff/Appellant.
Alvin J. Bordelon, Jr., J. McCaleb Bilbro, New Orleans, for Defendants/Appellees.
Before GRISBAUM, GOTHARD and DALEY, JJ.
DALEY, Judge.
Plaintiff, Nita Oubre, appeals the grant of Summary Judgment in favor of defendant, E-Z Serve Corporation. Plaintiff sued E-Z Serve for burns she sustained from spilling in her lap, while riding in a car, a cup of hot coffee just purchased from E-Z Serve. The trial court found that the coffee was not unreasonably dangerous in construction, composition, or design; that there was no duty to warn of a hazard obvious to the average user, and that theories of strict liability did not apply as the coffee was not in the custody and control of defendant at the time of the incident. On appeal, plaintiff argues that a material issue of fact remains as to the adequacy of the warning given to her by E-Z Serve. We affirm the trial court's ruling.
The record shows that Oubre was a passenger in the back seat of a car driven by her husband. They stopped at an E-Z Serve in LaPlace, where her husband and another passenger went inside to purchase breakfast. Oubre received a hotdog and a cup of coffee. The group left the E-Z Serve, driving a short distance away when, for unknown reasons, Oubre spilled the coffee in her lap. She was wearing cotton sweat pants at the time, which she alleged trapped the hot coffee and produced a serious second degree burn on her thigh.
In her petition, Oubre alleged that her damages were caused exclusively by the negligence and/or strict liability of defendant, E-Z Serve. She alleged that the coffee was unreasonably hot, that E-Z Serve failed to warn consumers that the coffee was unreasonably hot, that the coffee was inherently dangerous to normal use, and other acts of negligence and/or strict liability to be shown at trial.

Analysis
At the time the Motion for Summary Judgment was filed, LSA-C.C.P. art. 966 stated the following:
B. The motion for summary judgment and supporting affidavits shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
C. After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted against an adverse party who fails to make a showing sufficient to establish the existence of proof of an element essential to his *820 claim, action, or defense and on which he will bear the burden of proof at trial.
After July 1, 1997, Paragraph C was amended in pertinent part:
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that the will be able to satisfy his evidentiary burden of proof at trial, there is no material issue of fact.
Both before and after the 1997 amendment, the non-movant must present affirmative evidence to refute the evidence presented by the movant in favor of the Motion for Summary Judgment.
E-Z Serve filed a Motion for Summary Judgment and filed a Statement of Uncontested Facts. Plaintiff requested two extensions of time in which to present opposing evidence to defendant's evidence. Plaintiff explained that the extensions were necessary in order to procure expert witnesses. Plaintiff filed a Memorandum in Opposition to the Motion for Summary Judgment, but did not produce any evidence or affidavits or reports from expert witnesses, except for an affidavit by plaintiff explaining the sequence of events of the incident.
On appeal, plaintiff argues that there is a material issue of fact as to the adequacy of the warning, if any, provided by E-Z Serve to the plaintiff in connection with the sale of a convenience store cup of coffee which spilled on the plaintiff. In brief, plaintiff cites her husband's affidavit, which notes that he was neither warned nor saw any labels warning him of the "extreme" degree of heat of the coffee he was purchasing.
LSA-R.S. 9:2800.54 states in pertinent part:
(3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57.
LSA-R.S. 9:2800.57 provides in pertinent part:
A. A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.
B. A manufacturer is not required to provide an adequate warning about his product when:
(1) The product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product's characteristics; or
(2) The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.
E-Z Serve's evidence included an affidavit from Glen Blackwell, who was employed by Standard Coffee Services in New Orleans as Manager of Field Services. He stated that he had sixteen years as a technician and supervisor in Standard's repair shop, and that he was familiar with the operation and repair of the Bunn-O-Matic, the same brand of machine that E-Z Serve used to brew and serve coffee. He stated that the brewing process starts with water being heated in a tank, controlled by a thermostat. The brewing water then exits a spray head at the top of the brewing funnel. Customarily, the temperature of the water at the time it exits the spray head is 195 degrees Fahrenheit, plus or minus 5 degrees. This is the temperature *821 at which the oil and flavor is released from the coffee in the brewing funnel. The brewed coffee drips into a decanter or beaker through the bottom of the brewing funnel. Customarily, the coffee has cooled approximately 5 degrees from the temperature of the water at the top of the spray head. Immediately after the coffee has finished dripping into the beaker and the brewing cycle is complete, its temperature is customarily between 175-185 degrees Fahrenheit. The warming plate under the coffee decanter maintains the coffee's temperature at approximately 175 degrees, which is the temperature determined by the coffee industry as the one at which optimum flavor is retained. The temperature of the coffee will continue to decline over time, stabilizing at approximately 155 degrees Fahrenheit.
E-Z Serve also presented test evidence presented by its employee, Diane Christen. In three tests, she duplicated the plaintiff's husband's actions of purchasing the coffee and bringing it out to the car. The temperature was measured in the decanter, after it was poured into the cup, and when it arrived outside by the car entrance. In the first test, the first temperature (in the decanter) measured 174.5 degrees. Four minutes later, at the car entrance, the temperature measured 161.7 degrees. In the second test, the temperatures were 175.2 and 167.7, with a lapse of two minutes. In the third test, the temperatures were 171.7 and 161.2 degrees, with a lapse of two minutes.
Apparently, the tests were performed with no lid on the coffee cup. Plaintiff's Opposition to the Motion for Summary Judgment alleged that these tests were flawed because plaintiff's husband had placed a lid on the coffee cup. For the purposes of argument on the motion, E-Z Serve stipulated that the temperature of plaintiff's coffee was 170 degrees, which is several degrees higher than the test cups measured by the car.[1]
Finally, E-Z Serve noted that it is customary to serve coffee hot, because the heat is needed to release the flavor from the beans, and consumers desire to purchase their coffee hot, not tepid. They also cite Huppe v. Twenty-First Century Restaurants of America, Inc., 130 Misc.2d 736, 497 N.Y.S.2d 306 (1985). That case also involved a plaintiff who spilled coffee on herself while in a car backing away from the restaurant from which she purchased it. Plaintiffs alleged that the coffee was too hot or was hotter than normal, and that the defendant was liable for manufacturing an unreasonably dangerous product and for failure to warn. The defendant moved for summary judgment. Finding for defendant, the court found:
The only evidence of the temperature of the coffee served to plaintiffs is defendant's admission that its general practice was to brew coffee at a temperature between 195 degrees Fahrenheit and 205 degrees Fahrenheit and to hold it before serving at a temperature between 180 degrees Fahrenheit and 190 degrees Fahrenheit. However, the fact that the coffee was hot enough to cause injury if not properly handled does not mean that it was defective or negligently served. Where, as here, a product by its very nature has a dangerous attribute, liability is imposed only when the product has an attribute not reasonably contemplated by the purchaser or is unreasonably dangerous for its intended use. [cite omitted]
Since plaintiffs clearly intended no purchase hot coffee and since coffee is customarily served and intended to be consumed as a hot beverage, plaintiffs must present evidentiary facts establishing that the coffee served by defendant was defective or unreasonably dangerous by virtue of being hotter than it should have been. Plaintiffs have wholly failed to meet this burden. They merely make the conclusory allegation that the coffee was "super heated" and "too hot", and they submit only the testimony of Mr. Dikeos that he serves coffee at a lower temperature which he considers to be safe. Since plaintiffs have failed to show that the coffee was so hot that it exceeded the reasonable or customary standards for such a product, there is no evidence from which a trier of fact could *822 conclude that the coffee was defective, unreasonably dangerous, or negligently served.
The New York court went on to note that plaintiffs did not establish a duty to warn and a breach of that duty, because the hotness of the coffee was such an essential and intended attribute of the product that defendant had a duty to warn of its temperature only if it exceeded the reasonable range of temperature for such a product, which plaintiffs did not prove.
In the instant case, the Motion for Summary Judgment and supporting evidence established that the coffee industry standard's optimum temperature for the serving of coffee was 170-175 degrees Fahrenheit. Plaintiff did not dispute this assertion. The defendant also established, through the field tests performed by its employee, that a cup of coffee purchased at E-Z Serve was approximately 171.7-175.2 degrees in the decanter, and cooled to a range of 161.2167.7 degrees within four minutes after being poured from the decanter. Plaintiffs presented no evidence of the coffee's actual temperature, nor did they present any evidence that defendant's tests were inaccurate or atypical of coffee being sold at E-Z Serve.
Plaintiff filed an Opposition to defendant's Motion for Summary Judgment, but produced no factual countervailing evidence or affidavits. Plaintiff did not refute defendant's evidence of the accepted industry standard of coffee temperature, nor did she produce any evidence that her cup of coffee was supercharged, superhot, or hotter than normal, as alleged in plaintiff's petition. Moreover, the record shows that plaintiff was a frequent user of coffee, that she had purchased coffee from E-Z Serve before the incident, and has done so since.
Plaintiffs presented no evidence to support a finding of liability on the part of E-Z Serve. Accordingly, we affirm the trial court's grant of Summary Judgment in favor of defendant, E-Z Serve. All costs of this appeal are to be borne by appellants.
AFFIRMED.
NOTES
[1] Plaintiff did not appear for argument on the day of the hearing, and does not raise this issue in any assignment of error.