Zakary KESSEL by his guardian ad litem,
Mart W. Swenson, Christal Snider
and Nathan Kessel, Plaintiffs-Appellants,

HEALTH TRADITION HEALTH PLAN,
Involuntary Plaintiff-Interested Party,

v.

STANSFIELD VENDING, INC., Acuity and
Franciscan Skemp Medical Center, Inc.,
Defendants-Respondents.

Court of Appeals

*No. 2005AP1037. Submitted on briefs December 7, 2005.
—Decided March 16, 2006.*

2006 WI App 68

(Also reported in 714 N.W.2d 206.)

504

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Robert A. Parsons*, of *Bye, Goff & Rohde, Ltd.*, River Falls.

On behalf of the defendants-respondents Stansfield Vending and Acuity, the cause was submitted on the brief of *James G. Curtis* and *Craig R. Steger*, of *Hale, Skemp, Hanson, Skemp & Sleik*, La Crosse.

On behalf of the defendants-respondents Franciscan Skemp Medical Center, Inc., the cause was submitted on the brief of *Guy DuBeau*, of *Axley Brynelson, LLP*, Madison, and *Agnes M. Schipper, Esq.*, of *Mayo Clinic*, Rochester, Minnesota.

Before Lundsten, P.J., Vergeront and Higginbotham, JJ.

¶ 1. VERGERONT, J. This action seeks to recover damages for injuries sustained by Zakary Kessel, then fifteen months old, when he was burned by hot cocoa made with water that came from a hot water dispenser at Franciscan Skemp Medical Center. The circuit court granted summary judgment in favor of Franciscan Skemp Medical Center, Inc., and the company supplying the dispenser, Stansfield Vending, Inc. Zakary, by

507

his guardian ad litem, and his parents appeal. They contend there are disputed issues of fact on their claims that both defendants were negligent for failing to warn of the dangers of the hot water from the dispenser and that Franciscan Skemp was negligent for failing to provide lids for the cups it supplied for the hot beverages.

¶ 2. We conclude that the defendants' duty to exercise ordinary care with respect to warning users of the hot water dispenser is governed by RESTATEMENT (SECOND) OF TORTS § 388 (1965) and that, based on the undisputed facts, the defendants did not breach that duty. We also conclude that public policy considerations preclude liability for any negligence of Franciscan Skemp in failing to provide lids. We therefore affirm the summary judgment.

## BACKGROUND

¶ 3. The parties agree on many of the background facts relevant to this appeal. In January 2003, Zakary, then fifteen months old, went to Franciscan Skemp Medical Center with his parents, Nathan Kessel and Christal Snider, and his sister, Kyarra, then three and one-half. Christal was pregnant and thought she might be going into premature labor. She was admitted to a labor and delivery suite, and Nathan and the children went with her. After Christal was settled in the bed and hooked up to a monitor, Nathan went with Kyarra to the lounge area to get some hot chocolate for himself and the children. There was a hot water dispenser in the lounge area with a dispenser next to it for the cocoa powder. Nathan mixed up hot chocolate in two Styrofoam cups: one cup was full up to one inch of the top and one cup was between one-half and three-quarters full. When Nathan dispensed the hot water into the

508

cups, it was steamy. He intended to put ice in his children's cup because he wanted the beverage to be lukewarm, not hot, for them. He looked around the machines for lids for the cups but could not find any. He carried the two cups back to the suite without taking a sip from either; Kyarra walked beside him.

¶ 4. Back in the suite, Nathan put the full cup in the center of the tray table that was next to the bed so that he could put some ice chips in the other cup for the children. Zakary was near the television and was not looking at him, so Nathan thought he had time to turn his back and get some ice from Christal, who had a cup of ice chips in her hand and could see Zakary. While Nathan's back was turned, Zakary came over toward the tray table. Christal indicated to Nathan he needed to get over to Zakary, and Nathan turned just in time to see Zakary lift the cup on the table. Nathan grabbed the cup from his son as it started to spill onto his chest and neck area. Zakary sustained severe burns as a result.[1]

¶ 5. The complaint alleged that Stansfield Vending was negligent because there was no warning on the water dispenser,[2] and Franciscan Skemp was negligent because it did not provide proper warning of the dangers of the temperature of the water from the dispenser and did not provide lids for the cups.

---

[1] The appellants (collectively, the Kessels) refer to second and third-degree burns in describing the injury that hot water can cause, but they do not refer to any point in the record that describes Zakary's burns in these terms. The Kessels describe his burns as severe, and this description is supported by Christal's testimony on the medical treatment he received for the burns.

[2] Other claims against Stansfield Vending in the complaint are not relevant to this appeal.

¶ 6. After discovery, both defendants moved for summary judgment. Both argued that they had no duty to warn because they could reasonably assume that potential users would know the water was hot or could readily discover that. They also argued that, because Nathan knew the water was hot, Nathan could not establish that the lack of a warning caused Zakary's injuries. Franciscan Skemp argued that it had no duty to provide lids for the cups. Finally, both defendants argued that, even if they had duties that they breached, the court should preclude liability based on public policy.

¶ 7. The defendants' submissions in support of their motions included portions of Nathan's and Christal's depositions. Nathan testified that the handle of the spigot dispensing the water was red, no other part of the machine was red, and he understood that meant the spigot dispensed hot water. He also knew the water was hot because of the steam. He recognized that it was too hot for his children to drink and that he would not bathe his toddlers in water that was steaming. He had gotten hot chocolate from the machine a couple of years before and agreed it was common knowledge that hot chocolate was hot. He acknowledged that, given his knowledge of hot beverages in general and these particular beverages, he did not want them spilling on his family, and he knew he was creating a potentially dangerous situation by bringing the hot chocolate back to the room. Christal testified that she understood that water from the hot water dispenser at the hospital was likely to be hotter than hot tap water, and she would not want her children's skin to come into contact with hot water from a source such as the dispenser because that would cause burns; she agreed this was common knowledge.

¶ 8. The defendants' submissions also included the affidavit of a Stansfield Vending employee averring that the hot water dispenser was designed to heat water to a temperature between 180 and 190 degrees, the temperature needed to properly dissolve the powder; a test after the incident showed that the water temperature was in the expected range as pre-set by the manufacturer and had not malfunctioned. A Franciscan Skemp employee testified at a deposition that the cups the hospital provided next to the dispensers did not have lids because the purpose of the lounge was for people to eat and drink there; it was not intended or expected that people would carry the drinks somewhere else.

¶ 9. The plaintiffs (collectively, the Kessels) opposed summary judgment, arguing that there were disputed issues of fact that entitled them to a trial on whether the defendants had a duty to warn that the water was hot enough to cause serious injuries if spilled. They also argued that Franciscan Skemp had a duty to provide lids because it was reasonably foreseeable that fathers getting hot beverages from the machines in the lounge would carry them back to the labor and delivery suites. They disagreed that public policy precluded liability.

¶ 10. In support of their position, the Kessels submitted the deposition of Ronald Aubrey, a safety engineer, whom they had retained as an expert. He testified as follows. Most adults do not realize that they can get second or third-degree burns from hot water. Although responsible parents would not put their children in jeopardy of getting hot liquids spilled on them no matter what the temperature, they would be more careful if they knew the severity of the burn that could result. Because of that, he opined, Stansfield Vending

and the hospital had a duty to make sure that there was a warning on the cups such as "caution, hot" or "warning hot." Aubrey explained that the point of such a warning is to get the user's attention to the fact that he or she needs to be careful with the product. In his opinion the hospital should have provided locking lids for the cups it provided at the vending machines, given that the beverages might be carried to another place.[3]

¶ 11. The Kessels also provided portions of Nathan's deposition testimony in which he stated that, although he knew the water was hot, he did not realize it was hot enough to do what it did to Zakary's skin. He thinks that a warning that stated the actual temperature of the water or stated that it could cause second or third-degree burns might have changed his behavior with regard to the water, although he also acknowledged that he did not know if a sign saying "caution, hot" or "warning hot" would have made him more careful.

¶ 12. The circuit court granted summary judgment for the defendants. It first concluded that the material facts were undisputed. It next observed that, although there were no Wisconsin cases on point, cases in other jurisdictions generally had concluded there was no duty to warn about hot beverages absent evidence that the temperature exceeded industry standards or was hotter than normal, and there was no evidence of either situation here. The court also observed that there were no cases concluding that there was a duty to provide a lid for hot beverages. The court applied the

---

[3] To the extent Aubrey's testimony includes opinions on questions of law, those opinions are not considered when deciding a summary judgment motion. *See Gross v. Woodman's Food Market, Inc.*, 2002 WI App 295, ¶ 20 n.12, 259 Wis. 2d 181, 655 N.W.2d 718.

legal principle that a manufacturer did not have a duty to warn where the danger was obvious or readily discoverable by a potential user or was commonly known. Here, the court stated, it was undisputed that Nathan knew the water was steaming hot, and there was no reason for either Franciscan Skemp or Stansfield Vending to believe that someone using steaming water from the dispenser would not understand the nature of the danger involved. The court concluded that neither defendant had a duty to warn of the actual temperature used or that the water could cause second or third-degree burns if it touched the skin of a child. In view of these rulings, the court found it unnecessary to address the public policy arguments.

## ANALYSIS

¶ 13. On appeal, the Kessels contend there are disputed issues of fact on their claims that both defendants were negligent in not providing a warning that the water was hot enough to cause serious burns and that Franciscan Skemp was negligent in failing to provide lids for the hot beverages.

¶ 14. We review a grant of summary judgment de novo, applying the same standard as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). Summary judgment is proper when there are no material issues of disputed fact and one party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2).[4] In analyzing the submissions, we draw all reasonable inferences in favor of the party opposing summary judgment, and, if conflicting

---

[4] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

reasonable inferences may be drawn from the evidence, summary judgment is not proper. *Kraemer Bros., Inc. v. United States Fire Ins. Co.*, 89 Wis. 2d 555, 567, 278 N.W.2d 857 (1979).

¶ 15. To establish a negligence claim, a plaintiff must prove: (1) the existence of a duty of care on the part of the defendant, (2) a breach of that duty of care, (3) a causal connection between the defendant's breach of the duty of care and the plaintiff's injury, and (4) actual loss or damage resulting from the injury. *Smaxwell v. Bayard*, 2004 WI 101, ¶ 32, 274 Wis. 2d 278, 682 N.W.2d 923. However, even if all the elements are proved or even if liability for negligent conduct is assumed, the court may nonetheless preclude liability based on public policy factors. *Id.*, ¶ 39.

¶ 16. Although our analysis differs from that of the circuit court, we conclude the court reached the correct result in granting summary judgment in favor of the defendants on the negligence claims.

I. Failure to Warn—Stansfield Vending and Franciscan Skemp

¶ 17. We consider first the Kessels' contention that there are disputed issues of fact on whether Stansfield Vending and Franciscan Skemp were negligent because they failed to warn users that the water was hot enough to cause serious burns.

¶ 18. Under Wisconsin law, "[e]very person has a duty to use ordinary care in all of his or her activities, and a person is negligent when that person fails to exercise ordinary care." *Alvarado v. Sersch*, 2003 WI 55, ¶ 14, 262 Wis. 2d 74, 662 N.W.2d 350. "[A] duty to use ordinary care is established whenever it is foreseeable

that a person's act or failure to act might cause harm to another person." *Id.* "Under the general framework governing the duty of care, a person is not using ordinary care and is negligent, if the person, without intending to do harm does something (or fails to do something) that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property." *Id.* (citations omitted).

¶ 19. While this is the "general framework governing the duty of care," *id.*, the supreme court and this court have on occasion adopted provisions from RESTATEMENT (SECOND) OF TORTS (1965) to define a defendant's duty to exercise ordinary care in particular situations. Thus, in *Strasser v. Transtech Mobile Fleet Service, Inc.*, 2000 WI 87, ¶ 58, 236 Wis. 2d 435, 613 N.W.2d 142, the court noted that it had adopted RESTATEMENT (SECOND) OF TORTS § 388 (1965) to define the duty of a manufacturer, for purposes of a negligence action, to warn of a product's dangerous condition that might cause physical harm. Section 388 provides:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> > (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
> >
> > (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
> >
> > (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

515

¶ 20. The court in *Strasser*, 236 Wis. 2d 435, ¶ 58, also observed that RESTATEMENT (SECOND) OF TORTS § 388 cmt. k provided further clarification to the provision in subsec. (b) that there is a duty to warn only if the supplier has "no reason to believe" that the user "will realize" the product's dangerous condition:

> *When warning of defects unnecessary.* One who supplies a chattel to others to use for any purpose is under a duty to exercise reasonable care to inform them of its dangerous character in so far as it is known to him, or of facts which to his knowledge make it likely to be dangerous, if, but only if, he has no reason to expect that those for whose use the chattel is supplied will discover its condition and realize the danger involved. It is not necessary for the supplier to inform those for whose use the chattel is supplied of a condition which a mere casual looking over will disclose, unless the circumstances under which the chattel is supplied are such as to make it likely that even so casual an inspection will not be made.

RESTATEMENT (SECOND) OF TORTS § 388 cmt. k.

¶ 21. In essence, the court in *Strasser* concluded that RESTATEMENT (SECOND) OF TORTS § 388 and cmt. k defined the standard of ordinary care in that situation: "This exception [in cmt. k] recognizes that a warning is not necessary to satisfy the standard of ordinary care when the condition at issue is known to the user." *Strasser*, 236 Wis. 2d 435, ¶ 58. Applying this exception to the duty to warn, the court in *Strasser* concluded that, as a matter of law, the repair service that fabricated new ladders to replace those on the crane assembly it serviced did not have a duty to warn the user that the ladders had no safety treads because it had reason to believe that the user realized that. *Id.*, ¶ 59. The undisputed testimony showed that the user

was aware of the lack of safety treads, and this established that a casual inspection disclosed that the treads were not there. *Id.*

¶ 22. Stansfield Vending and Franciscan Skemp both contend that this Restatement provision defines their duty to provide a warning with respect to the hot water dispenser. The Kessels appear to agree, in that they acknowledge that this provision has been adopted by Wisconsin courts in other cases, and they do not argue that it does not or should not apply to these two defendants in this case. Wisconsin courts have applied the provision to manufacturers, *see, e.g., Strasser*, 236 Wis. 2d 435, ¶¶ 58–59,[5] and to suppliers who are in the business of selling a product. *Haase v. Badger Mining Corp.*, 2003 WI App 192, ¶¶ 1, 21, 266 Wis. 2d 970, 669 N.W.2d 737. However, RESTATEMENT (SECOND) OF TORTS § 388 cmt. c notes that the term "supplier of chattel" has a very broad meaning: " . . . any person who for any purpose or in any manner gives possession of a chattel for another's use, or who permits another to use or occupy it while it is in his own possession or control." The term includes "sellers, lessors, donors, or lenders, irrespective of whether the chattel is made by them or by a third person." *Id.* Given this broad meaning, Stansfield Vending and Franciscan Skemp are both suppliers of the hot water dispenser. In the absence of any argument against the application of this rule to both defendants in this case, and seeing no apparent reason why it should not apply to both, we employ § 388 and cmt. k to analyze the Kessels' claim that both

[5] RESTATEMENT (SECOND) OF TORTS § 394 provides that the duty of a manufacturer is the same as that of a supplier of chattel. *Mohr v. St. Paul Fire & Marine Ins. Co.*, 2004 WI App 5, ¶ 11 n.2, 269 Wis. 2d 302, 674 N.W.2d 576.

defendants breached their duty to warn users of the hot water dispenser.[6]

¶ 23. Thus, the inquiry on this appeal is whether there are disputed issues of fact concerning whether Stansfield Vending and Franciscan Skemp had "no reason to believe that those for whose use the hot water dispenser was supplied would realize its dangerous condition." It is undisputed that the water in the dispenser was hot enough to steam and that the steam was visible to Nathan. The only reasonable inference is that a casual observation by a person using the hot water dispenser discloses that the water is hot enough to produce steam. It is also undisputed that Nathan knew, from his observation and his experience, that the water in the dispenser was too hot for his small children to drink and that it was hot enough to present a danger to Zakary if it came in contact with his child's skin: that is why he was careful to put it down in a place where he thought Zakary could not reach it. Christal knew this, too, and viewed it as common knowledge. The only reasonable inference

---

[6] WISCONSIN JI—CIVIL 3242 reflects Wisconsin's adoption of RESTATEMENT (SECOND) OF TORTS § 388 (1965). *Strasser v. Transtech Mobile Fleet Service, Inc.*, 2000 WI 87, ¶ 58, 236 Wis. 2d 435, 460, 613 N.W.2d 142. The jury instruction phrases the exception in this way: " . . . [A] manufacturer (supplier) does not have a duty to warn about dangers that are known to the user, or are obvious to or readily discoverable by potential users, or are so commonly known that it can reasonably be assumed that users will be familiar with them." Apparently the language "or are so commonly known that it can reasonably be assumed that users will be familiar with them" is from WILLIAM L. PROSSER, LAW OF TORTS § 96 (4th ed. 1971). The parties' arguments based on the jury instruction are essentially the same as their arguments based on § 388 and cmt. k, and neither suggests that there is a distinction between the two that affects the analysis in this case. Accordingly, we do not separately discuss the jury instruction.

from the record is that the user of the dispenser would know that the water was hot enough to cause some level of injury if it came into contact with skin; there is no reasonable inference from the record that this is specialized knowledge, or knowledge that the ordinary user of the hot water dispenser would not have.

¶ 24. The Kessels argue, however, that knowing that the water is hot, even steaming hot, is not the same as realizing "its dangerous condition." RESTATEMENT (SECOND) OF TORTS § 388(b). They point to Aubrey's testimony that most adults do not realize that they can get second or third-degree burns from hot water; they know hot beverages are hot but not "the degree to which they may burn you . . . ." They also point to Nathan's testimony that he did not know the water was hot enough to do what it did to Zakary's skin.

¶ 25. The unstated premise of the Kessels' argument is that the supplier of a product has a duty to warn of the degree of injury a dangerous condition may cause. In other words, according to the Kessels, even though the steam from the hot water is readily observable to the user of the dispenser, and even though it is common knowledge that steaming water may cause injury if it comes into contact with skin, if the ordinary user does not know how serious the injury can be, the supplier has a duty to provide that warning. Whether this premise is correct depends upon how duty is defined in these circumstances, which is a question of law. *See Strasser*, 236 Wis. 2d 435, ¶ 60.

¶ 26. Our research has disclosed no Wisconsin case that has addressed the duty to warn in a context sufficiently analogous to provide guidance in this case.[7]

---

[7] In *Strasser*, as noted above, the dangerous condition was the lack of safety treads and the issue was whether that was

The parties refer us to cases from other jurisdictions that have addressed the existence or scope of the duty of a supplier of a hot beverage to warn the consumer of the danger of the hot liquid. While none of the cases brought to our attention, or any we were able to discover with our own research, apply RESTATEMENT (SECOND) OF TORTS § 388 or cmt. k, they all apply some formulation of the general principle that the supplier of a product does not have a duty to warn if the danger is obvious.[8] All but one of the cases concludes that, based

disclosed by a casual inspection. 236 Wis. 2d 435, ¶¶ 59–60. In *Estate of Schilling v. Blount, Inc.*, 152 Wis. 2d 608, 617, 620, 449 N.W.2d 56 (Ct. App. 1989), the product was .22 bullets and the danger was cocking a weapon loaded with those bullets; we rejected the plaintiff's argument that the manufacturer of the bullets had a duty to warn of that danger, concluding that it was so obvious that no reasonable person needed to be warned of the results that could occur. In *Kozlowski v. John E. Smith's Sons Co.*, 87 Wis. 2d 882, 889, 898–900, 275 N.W.2d 915 (1979), which the Kessels cite to in their reply brief, the issue was whether a general warning was sufficient to alert a user to a product's dangerous condition that was not observable. In *Mohr v. St. Paul Fire & Marine Ins. Co.*, 2004 WI App 5, ¶¶ 23–25, 269 Wis. 2d 302, 674 N.W.2d 576, we concluded there were disputed issues of fact whether the danger of diving from the platforms into less than five feet of water was obvious from a casual observation.

[8] Some of the cases from other jurisdictions discuss the duty to warn in the context of a claim for strict liability, either in addition to or instead of a negligence claim. The parties do not appear to attach any significance to these distinctions. Under strict liability law, a product is defective if it is sold without a warning when the seller has reason to anticipate that danger may result from a particular use. *Mohr*, 269 Wis. 2d 302, ¶ 32. We have previously commented that in Wisconsin case law, the distinction between a duty to warn that is the basis for a negligence claim and the warning required in order to prevent

on the undisputed facts, there is no duty to warn the consumer that a hot beverage can cause injuries, although the analyses vary somewhat.

¶ 27. Some of the cases conclude that, because the hotness of coffee is such an essential and intended attribute of the product, there is no duty to warn of the temperature unless it exceeds the reasonable range of temperature of such a product. *Huppe v. Twenty-First Century Restaurants of America, Inc.*, 497 N.Y.S.2d 306, 308–309 (N.Y. Sup. Ct. 1985); *Olliver v. Heavenly Bagels, Inc.*, 729 N.Y.S.2d 611, 613 (N.Y. Sup. Ct. 2001) (following *Huppe*); *Oubre v. E-Z Serve Corp.*, 713 So. 2d 818, 821–22 (La. Ct. App. 1998) (citing *Huppe*). Another case simply states that, when the consumer knows the beverage is hot, she knows the danger to which a warning would apply, so there is no duty to warn. *Lamkin v. Braniff Airlines, Inc.*, 853 F. Supp. 30, 32 (D. Mass. 1994).

¶ 28. A few cases address the specific argument the Kessels make—that it is not generally known that hot water can cause serious burns, as opposed to minor burns, and thus there is a duty to warn. The Seventh Circuit rejected this argument, reasoning that the degree of specificity logically required by the plaintiff's position—the severity of the burn from hot liquid depends on the liquid temperature, the volume, and the length of contact with skin, among other factors— would result in a warning that is not necessarily more helpful than the critical point, already known to the average consumer, that precautions should be taken to avoid spilling the hot liquid on the skin. *McMahon v.*

a product from being defective under strict liability law is not always clear. *Id.*, ¶ 32 n.10. In the cases that we discuss here from other jurisdictions, the distinction, if any, is not material to our discussion.

*Bunn-O-Matic Corp.*, 150 F.3d 651, 656 (7th Cir. 1998). *See also McCroy ex rel. McCroy v. Coastal Mart, Inc.*, 207 F. Supp. 2d 1265, 1277 (D. Kan. 2002) (citing *McMahon*).

¶ 29. Another analysis is that an alleged difference in the anticipated degree of danger does not make the risk less obvious. *Holowaty v. McDonald's Corp.*, 10 F. Supp. 2d 1078, 1085 (D. Minn. 1998). Thus, because "[t]he average consumer understands that coffee is hot, and that it will cause burns if it comes in contact with skin . . . . [the] defendants did not have a duty to warn plaintiffs that the coffee could cause severe burns if spilled." *Id.* at 1085 (footnote omitted). *See also McCroy*, 207 F. Supp. 2d at 1276–77 (citing *Holowaty*).

¶ 30. The one case that supports the Kessels' position is *Nadel v. Burger King Corp.*, 695 N.E.2d 1185 (Ohio Ct. App. 1997). In *Nadel* the issue was addressed in the context of a product liability claim, not a negligence claim.[9] The plaintiff argued that the coffee was defective because it failed to contain a warning of the danger of handling liquid served at 175 degrees. *Id.* at 588. The court described the issue as "not whether the coffee was hot or expected to be hot, but whether the coffee was so exceedingly hot that serving it without a warning of unforeseen danger was unreasonable." *Id.* The court concluded it was a question of fact for the jury whether it was an unforeseen danger that second-degree burns can result from spilled coffee; it could not conclude that, as a matter of law, this was common knowledge. *Id.* at 588–89. The dissent's analysis was similar to that of the *Holowaty* court: it is not the severity of the injury that constitutes an obvious risk; rather, the risk is "the 'danger or potentiality for danger'

---

[9] *See* footnote 8.

that a product possesses, regardless of the innumerable degrees of severity of injury which might occur." *Nadel*, 695 N.E.2d at 1194 in dissent (citations omitted).

¶ 31. We conclude the analysis in *Holowaty* and in the *Nadel* dissent is the most useful because it is consistent with RESTATEMENT (SECOND) OF TORTS § 388 and cmt. k, which Wisconsin courts have adopted. Section 388(b) and cmt. k focus on the "dangerous condition." The dangerous condition in this case is the steaming hot water: it is dangerous because water that is steaming hot can cause injury when it comes into contact with skin. This danger is common knowledge. Because the user of the dispenser will see that the water is steaming hot, the supplier has every reason to believe that the user will realize the danger that the hot water can injure skin; the supplier has no reason to believe that the user will not understand this. Because the user can see the dangerous condition by a casual inspection, the user is able to take the measures necessary to protect against the dangerous condition. The degree of the injury that may result from the dangerous condition will vary—based on how much is spilled, the length of contact with the skin, whether over clothing or on bare skin, etc. However, the supplier has no reason to know the degree of injury that may result in particular cases. We do not read § 388(b) and cmt. k to require that the supplier warn of the most severe injuries that may result from a dangerous condition that is readily apparent to the user. Rather, under the exception in cmt. k "a warning is not necessary to satisfy the standard of ordinary care when the *condition* at issue is known to the user." *Strasser*, 236 Wis. 2d 435, ¶ 58 (emphasis added).

¶ 32. Based on this construction of RESTATEMENT (SECOND) OF TORTS § 388(b) and cmt. k, we conclude that

neither Stansfield Vending nor Franciscan Skemp were negligent for failing to warn the users of the hot water dispenser that the steaming water could cause serious burns. It follows that any dispute over whether this is common knowledge is not material. The facts that are material to the defendants' duty to warn under § 388(b) and cmt. k, as we have explained in paragraph 23, are not disputed. Based on those undisputed facts, the defendants are entitled to judgment as a matter of law that they are not negligent for failing to warn about the hot water in the dispenser.

## II. Failure to Provide Lids—Franciscan Skemp

¶ 33. The Kessels argue that there are disputed issues of fact whether Franciscan Skemp was negligent for not providing lids for the cups it supplied for users of the hot water dispenser. The hospital's duty to do so, the Kessels contend, depends on the forseeability that injury would result from spills from the cups that were supplied without lids. As evidence of forseeability, the Kessels point to the following: there was no sign prohibiting people from taking the hot beverages from the lounge, and it is reasonable to infer from the evidence that the hospital knew that the people using the lounge would be there with women in the labor and delivery suites, would likely be worried and distracted, would likely take hot beverages back to the private rooms, and would not appreciate "the true dangers of hot beverages."

¶ 34. Unlike the claim of negligence based on a failure to warn, neither party directs us to a specific formulation of the duty to exercise ordinary care with respect to providing lids in the circumstances of this case. Therefore "the general framework governing the duty of care" applies, under which "a person is not using

ordinary care and is negligent, if the person, without intending to do harm does something (or fails to do something) that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property." *Alvarado*, 262 Wis. 2d 74, ¶ 14 (citations omitted). Rather than discussing whether there are disputed issues of fact material to this standard, we assume for purposes of this decision that the failure to provide the lids constitutes negligence, and we resolve the issue of liability on public policy grounds.

¶ 35. Whether public policy precludes liability is a question of law, which we decide de novo. *Smaxwell*, 274 Wis. 2d 278, ¶ 40. Recovery against a negligent tortfeasor may be barred based on public policy if this court determines any of the following:

> (1) the injury is too remote from the negligence; (2) the injury is too wholly out of proportion to the tortfeasor's culpability; (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; (4) allowing recovery would place too unreasonable a burden upon the tortfeasor; (5) allowing recovery would be too likely to open the way to fraudulent claims; or (6) allowing recovery would have no sensible or just stopping point.

*Id.* (citation omitted). "Liability may be denied solely on the basis of one of these factors." *Id.*, ¶ 41 (citation omitted).

¶ 36. We are mindful that generally the " 'better practice is to submit the case to the jury before determining whether the public policy considerations preclude liability.' " *Id.*, citing *Alvarado*, 262 Wis. 2d 74, ¶ 18. "However, where the facts presented are simple

and the question of public policy is fully presented by the complaint and the motion for summary judgment, this court may make the public policy determination." *Smaxwell*, 274 Wis. 2d 278, ¶ 41, citing *Sawyer v. Midelfort*, 227 Wis. 2d 124, 141, 595 N.W.2d 423 (1999).

¶ 37. In this case the facts necessary to resolve the public policy issue are not complex and they are fully presented in the summary judgment record. As we have already concluded, it is undisputed that a casual observation by a person using the hot water dispenser discloses that the water is hot enough to produce steam; it is undisputed that the ordinary user would understand that the steaming water could cause injury to the skin if it spilled; and there is no basis in the record for concluding that Franciscan Skemp had a reason to believe otherwise. We will take as true the disputed facts and reasonable inferences most favorable to the Kessels: that the hospital knew or reasonably should have known that the people using the lounge would be there with women in the labor and delivery suites, would likely be worried and distracted, would likely take hot beverages back to the private rooms, and would not understand that the water was hot enough to cause serious burns, as opposed to minor burns. We will also assume that it is relatively simple and inexpensive for Franciscan Skemp to provide lids for the cups. This factual predicate fully presents the public policy issue, and there is no need for a jury's findings on negligence, damages, and the causal relationship between them to aid in evaluating the public policy considerations. *Cf. Alvarado*, 262 Wis. 2d 74, ¶ 25.

¶ 38. Turning now to the public policy considerations, we conclude that the first and sixth are applicable here and that they preclude liability. First,

Zakary's injury is too remote from the negligence. Nathan, Zakary's father, used the water dispenser in the lounge and, instead of staying there, chose to carry the hot beverage back into the private room, which he did without any spill that caused injury. Nathan's father never intended that his son have contact with the hot beverage before he cooled it down, and he took what he thought were appropriate measures to prevent that. The injury occurred when he misjudged how quickly his child could get to the place he put the cup while he turned his back to get ice. Thus, the injury is the result of a chain of events occurring after Nathan carried the cups without spilling, and none of those subsequent events were under the control of Franciscan Skemp.

¶ 39. Closely related to the first point is the consideration that allowing recovery in this case would have no sensible or just stopping point. Because the water was steaming hot, Franciscan Skemp could reasonably believe that the user would see this, understand that the hot water could cause injury, and take the necessary precautions, depending on what the user chose to do with the hot beverage. There are an unlimited number of reasons why persons might not take precautions, or might take inadequate precautions, and why injury might result. If Franciscan Skemp is liable for Zakary's injuries, it is difficult to see why it would not be liable for injuries resulting from a whole series of events over which it has no control—someone injured when walking quickly with a cup of the hot beverage that spills on the hand; someone injured when, while standing and holding a cup, another person bumps into them; a child injured when a parent gives the child a cup of the hot beverage to drink without cooling it down and the beverage spills on the child; someone injured when he or she places a cup of

the hot beverage on an unstable surface or too near the edge of a table or knocks it over by accident. We see no principled way to distinguish, in terms of Franciscan Skemp's liability for failure to supply lids for the cups, between these situations and the one before us; and we are satisfied that it would not be reasonable to impose liability in any of these situations.

## CONCLUSION

¶ 40. Applying RESTATEMENT (SECOND) OF TORTS § 388, we conclude the material facts are not disputed and, as a matter of law, Stansfield Vending and Franciscan Skemp are not negligent for failing to warn with respect to the hot water from the dispenser. We also conclude that public policy considerations preclude liability for any negligence of Franciscan Skemp in failing to provide lids. We therefore affirm the summary judgment in favor of Stansfield Vending and Franciscan Skemp.

*By the Court.*—Order affirmed.