Briane F. PAGEL, Jr. and Joy Pagel,
Plaintiffs-Appellants,

v.

MARCUS CORPORATION d/b/a
Hilton Milwaukee City Center, Defendant,

MILWAUKEE CITY CENTER LLC,
Defendant-Respondent.

Court of Appeals

*No. 2007AP1369. Submitted on briefs March 4, 2008.*
*—Decided June 3, 2008.*

2008 WI App 110

(Also reported in 756 N.W.2d 447.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *J. David Krekeler* and *Anthony Baer* of *Krekeler Strother, S.C.*, of Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Ronald G. Pezze, Jr.* and *Ahndrea R. Van Den Elzen* of *Peterson, Johnson & Murray, S.C.*, of Milwaukee.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. KESSLER, J. Briane F. Pagel, Jr., and Joy Pagel (individually and collectively, Pagel) appeal from an order granting summary judgment to Milwaukee City Center LLC (MCC), dismissing all claims by Pagel against it. Pagel asserts that the trial court erred when it applied § 388 of the RESTATEMENT (SECOND) OF TORTS to the facts here, and concluded that the hazard, which Pagel claims caused his injury, was open and obvious to Pagel, thus relieving MCC of a duty to provide signs warning of the open and obvious hazard. We affirm.

## Background

¶ 2. Pagel and his family visited an indoor water park owned by MCC in a hotel in Milwaukee. Among the water attractions used by Pagel and his family was a "Lily Pad Walk" which Pagel described as:

> The lily pads were a couple of large floating cushions underneath a cargo-style net. Each pad was about [four feet] in diameter and had a vinyl-like coating on them.
>
> . . . .
>
> You grabbed the cargo net and stepped onto the lily pads, holding yourself by your arms as you used the lily pads to try to go ahead. The lily pads were chained to the bottom but loosely so they could float around, and they didn't float well enough to hold up even a little kid.

¶ 3. Pagel testified that before he used the Lily Pad Walk, he "knew the lily pads could tip to cause you to fall into the water." When he used the Lily Pad Walk the first time, Pagel said his hand slipped off the ropes, the lily pad moved away from his feet, and, as a result, he dropped into the water rather than hanging from the

ropes. Pagel testified about his observation of the mechanics of the Lily Pad Walk during his first time across:

> Q: When you used the Lily Pad attraction the first time, why didn't you continue to hold on to the rope when the lily pad tipped?
>
> A: Because I was going to drop into the water.
>
> Q: Well, you did drop into the water. But my question was, why didn't you continue holding on to the rope?
>
> A: I didn't want to be just be [sic] hanging from the rope. When I couldn't get it by the foot, your only option at that point would be just to hang by the rope and try to go across just with your arms, I guess. And I – that didn't seem like a smart move, so I just dropped.

Pagel acknowledged that before using the Lily Pad Walk he watched other people using it, saw people fall into the water using it, and saw people trying to traverse across the Lily Pad Walk while he was waiting in line to use it.

¶ 4. Pagel alleged that he was injured when he used the Lily Pad Walk when his foot slipped from the lily pad, he lost his grip on the cargo net ropes above the water and lily pads, and fell into the water, injuring his back. The injury occurred the second time he used the Lily Pad Walk. His amended complaint alleged, as material to this appeal, negligence by MCC for failure "to provide a warning of the unsafe condition of the lily pad section of its water park."

¶ 5. Relying on *Kessel ex rel. Swenson v. Stansfield Vending, Inc.*, 2006 WI App 68, 291 Wis. 2d 504, 714 N.W.2d 206, and § 388 of the RESTATEMENT (SECOND)

OF TORTS, the trial court observed that "where an injured person already knows what he or she needs to know to avoid a danger, the law does not impose a duty to warn on a person who provides a product for the use of another." Based on the undisputed facts, the trial court then granted summary judgment dismissing Pagel's negligence claim against MCC. Pagel appeals.

## Standard of Review

¶ 6. In reviewing motions for summary judgment, we apply the standards set forth in WIS. STAT. § 802.08 (2005–06),[1] in the same manner as the trial court. *Moua v. Northern States Power Co.*, 157 Wis. 2d 177, 184, 458 N.W.2d 836 (Ct. App. 1990). "Summary judgment is [properly] granted when there is no genuine issue of material fact and only a question of law is at issue." *Id.* The historical facts here are not in dispute. "Whether facts fulfill a particular legal standard is a question of law to which we give *de novo* review." *Bantz v. Montgomery Estates, Inc.*, 163 Wis. 2d 973, 978, 473 N.W.2d 506 (Ct. App. 1991); *see also DOR v. Exxon Corp.*, 90 Wis. 2d 700, 713, 281 N.W.2d 94 (1979), *aff'd,* 447 U.S. 207 (1980).

¶ 7. "Where the facts alleged to give rise to a duty are agreed upon, the question of the existence of a duty is one of law." *Rockweit v. Senecal*, 197 Wis. 2d 409, 419, 541 N.W.2d 742 (1995) (quoting *Olson v. Ratzel*, 89 Wis. 2d 227, 251, 278 N.W.2d 238 (Ct. App. 1979)). Where the undisputed facts establish that a danger is open and obvious to the user of the product, as a matter

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

of law there is no duty to warn the user of that danger and summary judgment is proper. *Griebler v. Doughboy Recreational, Inc.*, 160 Wis. 2d 547, 561, 466 N.W.2d 897 (1991).

## Analysis

¶ 8. The role an open and obvious danger plays in our tort law has evolved over a long period of time. Describing the open and obvious nature of the danger as a "defense," the trial court in *Griebler* granted summary judgment, dismissing a claim of injury in a shallow water diving accident. *Id.* at 551, 554. The court of appeals reversed, relying on § 343A(1) of the RESTATEMENT (SECOND) OF TORTS (1965) and a related comment which required not only that the reasonable person/user must recognize that an open and obvious danger exists, but that person must also appreciate the gravity of the harm threatened by that danger. *Griebler*, 160 Wis. 2d at 556–57. Our supreme court rejected § 343A(1), noting that, as in all of the earlier diving cases, the condition of the water is the obvious danger, the risk is that the person diving will hit bottom, and the type of injury that might result (or the person's knowledge thereof) is irrelevant. *Griebler*, 160 Wis. 2d at 558. The supreme court reversed our decision and reinstated summary judgment dismissing Griebler's complaint, stating:

> We hold that the open and obvious danger defense applies whenever a plaintiff voluntarily[2] confronts an open and obvious condition and a reasonable person in

---

[2] By footnote, the court recognized two conditions which would preclude invoking the open and obvious danger defense, namely if the injured person was distracted or if the injured person could not avoid the condition. *Griebler v. Doughboy*

the position of the plaintiff would recognize the condition and the risk the condition presents.

*Id.* at 551 (footnote modified). Relying on "nearly twenty years of Wisconsin law holding that diving into water of unknown depth is an open and obvious danger,"[3] *id.* at 557, where Griebler admitted that he dove headfirst into water, whose depth he did not know, *id.* at 557, the supreme court described such conduct as "unreasonable as a matter of law," *id.* at 561.

¶ 9. Four years later, in *Rockweit*, when a small child walking with his mother fell into a campground fire pit with smoldering embers, our supreme court noted that in previous cases it had

abrogated the common law immunity [for owners of premises] by subsuming the concept of open and obvious danger into the consideration of common law negligence. In the ordinary negligence case, if an open and obvious danger is confronted by the plaintiff, it is merely an element to be considered by the jury in apportioning negligence and will not operate to completely bar the plaintiff's recovery.

*Id.*, 197 Wis. 2d at 423. This holding placed the characterization of an open and obvious danger as a defense to negligence in the context of applying a comparative negligence analysis. Pagel relies on specific *Rockweit*

*Recreational, Inc.*, 160 Wis. 2d 547, 551, 466 N.W.2d 897 (1991) (citing *Waters v. U.S. Fid. & Guar. Co.*, 124 Wis. 2d 275, 369 N.W.2d 755 (Ct. App. 1985), and *Maci v. State Farm Fire & Cas. Co.*, 105 Wis. 2d 710, 314 N.W.2d 914 (Ct. App. 1981), *overruled on other grounds by Rockweit v. Senecal*, 197 Wis. 2d 409, 423, 541 N.W.2d 742 (1995)).

[3] The *Griebler* court relied on *Scheeler v. Bahr*, 41 Wis. 2d 473, 164 N.W.2d 310 (1969), and *Davenport v. Gillmore*, 146 Wis. 2d 498, 431 N.W.2d 701 (Ct. App. 1988), for the duration of these holdings. *Griebler*, 160 Wis. 2d at 557.

language[4] to argue that summary judgment was not proper here because the lack of warning is merely a fact to be considered in apportioning the negligence attributable to MCC. Pagel argues that a jury must decide whether MCC's common law duty of care is overcome by the defense that there was an open and obvious danger which Pagel recognized before he was injured.

¶ 10. Pagel's reliance on this isolated language in *Rockweit* is misplaced. In *Rockweit*, a fire pit at a commercial campground was used in common by the large extended family of the child victim, who were camping together. *Id.* at 414. A family friend, who was staying at a different area of the campground, was invited to a social gathering with the extended family at a fire pit the night before the accident occurred. *Id.* at 415. The friend, who was also named as a defendant, did not select the fire pit site, took no part in setting, controlling or managing the fire, and did not use that fire pit while she was camping. *Id.* Her only connection with the fire pit was attending the social gathering to which she was invited. *Id.* at 415. When the friend and two members of the child's extended family were the last to leave the social gathering, no one extinguished the embers. *Id.* at 415–16. The next morning the child was walking with his mother when he stumbled into the pit which still contained live embers. *Id.* at 416. The child alleged negligence by the friend and the others who were the last to leave and did not extinguish the embers. *Id.* The jury found the campground owner, the family members present, the child's mother, and the friend were all negligent. *Id.*

---

[4] "In the ordinary negligence case, if an open and obvious danger is confronted by the plaintiff, it is merely an element to be considered by the jury in apportioning negligence . . . ." *Rockweit*, 197 Wis. 2d at 423.

¶ 11. On appeal, our supreme court concluded that public policy considerations precluded imposing liability on the invited friend. *Id.* at 429. The court noted that fire is commonly known to be dangerous, *id.* at 427 ("The dangerous propensities akin to fire are commonplace to a campsite."), and that the child's mother, who was with the child when he fell into the pit, knew as much about the danger of the fire pit as the invited friend, *id.* at 428 ("[Mother] testified that she was fully aware that the fire pit constituted a hazard at the time of the accident and had not relied on a supposition that someone the night before might have doused the embers . . . ."). These considerations foreshadowed the court's later decision to adopt § 388 of the RESTATEMENT (SECOND) OF TORTS in the context of the open and obvious danger of a chattel which is alleged to have caused injury.

¶ 12. Five years after *Rockweit,* our supreme court in *Strasser v. Transtech Mobile Fleet Service, Inc.,* 2000 WI 87, ¶¶ 57–59, 236 Wis. 2d 435, 613 N.W.2d 142, adopted the RESTATEMENT (SECOND) OF TORTS § 388 (1965), which provides:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

*Strasser* involved personal property—a ladder fabricated without safety treads on the rungs—which Strasser used many times before he slipped on a rung and fell. *Id.*, 236 Wis. 2d 435, ¶ 19. Our supreme court did not overrule *Rockweit* (which involved only real property—a fire pit in the ground). *Strasser,* 236 Wis. 2d 435, ¶ 60. Rather, by adopting § 388, the supreme court adopted the law of a real property owner's responsibility to invitees to codify the common law duty of due care owed by the provider of personal property to the user of personal property when the use for which the property is intended causes injury. Although somewhat awkwardly stated in the negative, § 388(1) establishes that when the danger is open and obvious to a reasonable person, warning of what the reasonable person already knows is unnecessary; thus, the failure to warn cannot be negligent. *Strasser,* 236 Wis. 2d 435, ¶¶ 59–60.

¶ 13. The adoption of RESTATEMENT (SECOND) OF TORTS § 388 moved the open and obvious danger to the level of being not only a jury issue as a defense to negligence when the material facts of whether the danger is open and obvious are disputed, but also removed any duty to warn from the negligence calculus when the undisputed material facts establish that the danger is open and obvious and the user recognizes/observes/ knows of the danger. Approximately four years after *Strasser,* in *Mohr v. St. Paul Fire & Marine Insurance Co.,* 2004 WI App 5, 269 Wis. 2d 302, 674 N.W.2d 576 (Ct. App. 2003), we discussed § 388(b), noting that:

88

As the court explained in *Strasser*, one of the situations under § 388(b) in which a supplier or manufacturer has no duty to warn of a danger is when " 'a mere casual looking over will disclose [the dangerous condition] unless the circumstances under which the chattel is supplied are such as to make it likely that even so casual an inspection will not be made.' " ... When danger is obvious from a mere casual looking over, the supplier or manufacturer has reason to believe that the user will realize the danger.

*Mohr*, 269 Wis. 2d 302, ¶ 23 (citing *Strasser*, 236 Wis. 2d 435, ¶¶ 58–59).

¶ 14. *Mohr* presented a factual dispute as to whether a diving platform used by a high school for racing dives into 3.5 feet of water, rather than 5 feet of water, was something that a casual observation would disclose as dangerous. *Id.*, ¶ 3 (discussing RESTATEMENT (SECOND) OF TORTS § 388 cmt. k). We concluded that summary judgment was inappropriate, not because a jury must always decide whether a danger is open and obvious, but because the facts material to that question were disputed—one high school swim coach had one view, and another swim coach at the same high school had a different view. *Id.*, ¶¶ 17–18, 25.

¶ 15. Later, in *Kessel*, we held there was no duty to warn of danger from steaming water coming from a hot water dispenser (provided in a hospital waiting room to let patients' families make hot chocolate) where the hot temperature was obvious from the steam, and both parents admitted they took precautions because they knew that hot water could injure their young child (who tipped the cup and was injured by the scalding water). *Id.*, 291 Wis. 2d 504, ¶¶ 3–4, 23, 32. We discussed whether *Strasser* held that RESTATEMENT (SECOND) OF TORTS § 388(1) inevitably required a warning to comply with the duty of care:

In essence, the court in *Strasser* concluded that
Restatement (Second) of Torts § 388 and cmt. k defined
the standard of ordinary care in that situation: "This
exception in cmt. k recognizes that *a warning is not
necessary to satisfy the standard of ordinary care when
the condition at issue is known to the user.*"

*Kessel*, 291 Wis. 2d 504, ¶ 21 (citation and brackets
omitted; emphasis added).

■

¶ 16. As we explained in *Kessel*, where the sup-
plier of the tangible property has reason to believe that
casual inspection will disclose the danger, and the user
is aware of the danger, Restatement (Second) of Torts
§ 388 does not require a warning. *Kessel*, 291 Wis. 2d
504, ¶ 21. Here, it is undisputed that Pagel used the
Lily Pad Walk once without injury. It is also undisputed
that before, or during, his first use, Pagel personally
observed how the Lily Pad Walk worked, knew from
observation and experience that the lily pads were not
stable, knew that they could not hold up even a small
child, and that because of their obvious instability, the
only alternatives available to users of the Lily Pad Walk
were to drop or fall into the water[5] or use their hands to
hold on to the cargo net ropes above to cross the area
hand over hand. On his first use of the Lily Pad Walk,
Pagel chose to get wet rather than travel by hand on the
cargo net ropes. Thus, he knew both from experience
and from observation that when the pad moved, the only
two choices were to drop or fall into the water or to use
his hands to hold onto the cargo net ropes to cross the

---

[5] It would seem that the primary purpose of a water park is
to get into the water. One would expect that the possibility of
getting wet, or even drenched, is the very attraction that brings
visitors to these facilities.

area. The danger—that the pads would move—was open and obvious. The only ways to avoid the danger while using the Lily Pad Walk—get wet or travel hand over hand on the cargo net ropes—were equally open and obvious.

¶ 17. The terms of RESTATEMENT (SECOND) OF TORTS § 388 apply here. MCC supplied the Lily Pad Walk in the water park for use by visitors to the water park. Section 388(1) ("One who supplies . . . a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel" under certain conditions.). MCC is liable if it "has reason to know that the chattel is likely to be dangerous for the use for which it is supplied." *Id.* The lily pads were obviously unstable, tending to cause (or allow) users to fall into the water, or to traverse the area using their hands on the cargo net ropes. The "danger" of falling into the water or the "danger" of crossing by hands on ropes is the very purpose of the Lily Pad Walk. These "dangers" are not hidden in any way. These properties were apparent to Pagel before and/or during his uneventful first use of the Lily Pad Walk. Section 388(b) imposes liability if the supplier of the product "has *no reason* to believe that those for whose use the chattel is supplied will realize its dangerous condition." *Id.* (emphasis added). Here, the converse is the fact. Because the mechanics of the moving lily pads and cargo net ropes for hand use were open and obvious to anyone who looked, MCC had reason to believe these "dangers" would be immediately apparent to any reasonable person. Hence, as in *Strasser*, where the lack of safety treads on the ladder was obvious to anyone who looked, and specifically known to Strasser who used the treadless ladder multiple times before his injury, the liability imposed by § 388(b) is not applicable here, where MCC had no

reason to believe these conditions would *not* be immediately apparent to users of the Lily Pad Walk, and these dangers were specifically known to Pagel, in part because he had used the Lily Pad Walk before the use during which he was injured.

¶ 18. Pagel urges us to adopt RESTATEMENT (SECOND) OF TORTS § 343A(1) and apply it to his case. As we explained above, when we relied on the § 343A(1) analysis in *Griebler*, our supreme court rejected our analysis and overruled our conclusion. *See* ¶ 8, *supra.* It is not our role to reject our supreme court's policy conclusions. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997):

> [T]he supreme court's primary function is that of law defining and law development. The supreme court, unlike the court of appeals, has been designated by the constitution and the legislature as a law-declaring court. The purpose of the supreme court is to oversee and implement the statewide development of the law. The supreme court is the only state court with the power to overrule, modify or withdraw language from a previous supreme court case.

(Citations and internal quotation marks omitted.)

¶ 19. Where, based on the undisputed facts, the dangerous condition of a chattel is open and obvious to the reasonable user, no warning is required under RESTATEMENT (SECOND) OF TORTS § 388(1), and summary judgment dismissing a negligence claim premised on failure to warn is proper.

*By the Court.*—Judgment affirmed.